## PEOPLE v. MAKI.

1. INDICTMENT AND INFORMATION—SUFFICIENCY—NEGLIGENT HOMICIDE—FAILURE TO CHARGE SPECIFIC ACTS.

An information for negligent homicide under Act No. 98, Pub. Acts 1921, which sets up the charge in the language of the statute, but does not specify the acts of negligence relied upon as the cause of death, is insufficient.

2. SAME—MOTOR VEHICLES—NEGLIGENT HOMICIDE.

An information under Act No. 98, Pub. Acts 1921, charging involuntary manslaughter, in that defendant "did operate said automobile * * * in a reckless and careless manner," which did not indicate whether the negligence charged consisted of an unlawful act or the careless performance of a lawful act, and did not specify the acts of negligence relied upon, was insufficient to support a charge of negligent homicide, upon evidence showing that defendant was driving on the left side of the road at the time of the accident resulting in decedent's death.

3. SAME—CONSTITUTIONAL LAW—FAILURE TO INFORM ACCUSED OF OFFENSE CHARGED.

An information which omits essentials of the offense charged or allegations necessary to fulfil the constitutional right of the accused "to be informed of the nature of the accusation," is not sustainable under 3 Comp. Laws 1915, § 15751, although it describe the offense in the words of the statute creating it.

4. SAME—WHEN CRIME CHARGED IN LANGUAGE OF STATUTE NOT SUFFICIENT.

Where a statute uses general or generic terms in describing an offense, does not sufficiently define the crime or set out all of its essential elements, or where a charge in the language of the statute charges a mere legal conclusion, an information which alleges the crime in the words of the statute is not sufficient, but a more particular statement of facts is necessary.

5. SAME—FAILURE TO DEMAND EXAMINATION DOES NOT CURE DEFECTIVE INFORMATION.

Failure of accused to demand an examination does not cure a defective information, and he is not called upon to act or defend himself until he has been confronted by a proper charge of a specific offense alleged in such a way as to fulfil the constitutional test.

6. CRIMINAL LAW—DEFECTIVE INFORMATION—MISCARRIAGE OF JUSTICE.

A conviction of negligent homicide under Act No. 98, Pub. Acts 1921, where the information was insufficient in that it failed to allege the negligent acts relied on, should not be affirmed under 3 Comp. Laws 1915, § 14565, providing for affirmance unless, on the whole case, the court finds a miscarriage of justice.

NORTH, C. J., and WIEST and SHARPE, JJ., concurring in reversal on other grounds.

Exceptions before judgment from Marquette; Flannigan (Richard C.) and Bell (Frank A.), JJ. Submitted October 12, 1928. (Docket No. 129, Calendar No. 33,848.) Decided January 7, 1929.

Kalle Maki was convicted of negligent homicide. Reversed.

*M. J. Kennedy,* for appellant.

*Wilber M. Brucker,* Attorney General, and *Clarence E. Lott,* Prosecuting Attorney, for the people.

NORTH, C. J.  The defendant herein was charged with involuntary manslaughter in consequence of a collision between the automobile driven by him and one driven by the deceased, Alfred Larson.  The conviction was for negligent homicide and the defendant reviews by writ of error.

The information contains only one count and charges that (1) the defendant, Maki, was driving at an unreasonable and unlawful rate of speed, (2) that he was driving without having his car under control, (3) that he was driving on the highway while intoxicated, and (4) that he did wilfully, etc., drive his automobile against the automobile of said Larson in a reckless and careless manner and thereby caused the latter's death.  Of these alleged acts of unlawfully operating the defendant's automobile the first three were not sustained by the proof, and the trial court charged the jury:

"So all of these matters, the speed of the car, the control of the car and intoxication are taken out of the case and taken from your consideration as showing in any manner that the defendant was guilty of negligence in respect to the accident which happened there. *The people, however, claim that the defendant was driving on the wrong side of the road."*

The defendant assigns error because the case was submitted to the jury on the theory covered by the italicized portion of the charge above quoted, *i. e.,* that the defendant was driving his automobile on the wrong side of the road.  It is claimed by the defendant that no such charge is contained in the

information. This question was timely raised by objection to testimony, by a motion for a directed verdict, by requests to charge, and assignments of error based on the charge as given. Aside from those portions which the trial court held were not sustained by any proof, we find the following charged in the information:

"And (the defendant) did operate said automobile so as to endanger the life of Alfred Larson and did then and there wilfully, feloniously, wantonly, and recklessly drive said automobile into and against the automobile of said Alfred Larson, in a reckless and careless manner, giving to the said Alfred Larson * * * mortal wounds and injuries of which * * * said Alfred Larson * * * died."

By the verdict rendered the jury acquitted the defendant of the charge of involuntary manslaughter; and hence we are now concerned only with the question as to whether the information properly charges the defendant with negligent homicide. The statute (Act No. 98, Pub. Acts 1921 [Comp. Laws Supp. 1922, § 15226 (2–4)]) provides:

"Section 1. Every person who, by the operation of any vehicle at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, shall cause the death of another shall be guilty of the crime of negligent homicide. * * *

"Sec. 2. The crime of negligent homicide shall be deemed to be included within every crime of manslaughter charged to have been committed in the operation of any vehicle, and in any case where a defendant is charged with manslaughter committed in the operation of any vehicle, if the jury shall find the defendant not guilty of the crime of manslaughter such jury may in its discretion render a verdict of guilty of negligent homicide.

"SEC. 3. In any prosecution under this act, whether the defendant was driving at an immoderate rate of speed shall be a question of fact for the jury and shall not depend upon the rate of speed fixed by law for operating such vehicle."

We think the portion of the information above quoted sufficiently charges the defendant with having committed the crime of negligent homicide by recklessly and carelessly driving his automobile into and against the automobile of the deceased and thereby causing the latter's death. Not all of the details of the collision are alleged; but all the essential elements of the offense are charged. If the defendant desired further details of the facts and circumstances out of which the alleged offense arose he might have obtained them by demanding an examination before the magistrate. He saw fit to waive his right to an examination, but he should not be allowed to use this circumstance as a means of obtaining a new trial. As stated by Justice WIEST in *People* v. *Townsend,* 214 Mich. 267 (16 A. L. R. 902), so it might be said in the instant case:

"The right of an accused to be fully informed of the nature of the charge against him relates, so far as the information is concerned, solely to the charge and not to the evidence in support thereof.   *   *   * The information sufficiently charges that the unlawful act was the proximate cause of the accident and avers a direct relation between the unlawful act of operating the automobile" in a reckless and careless manner and the accident which followed.

The *Townsend Case* quotes:

" 'This information charges that defendant carelessly, recklessly and with culpable negligence operated and propelled this automobile.   *   *   *   It was not, in our judgment, essential that the informa-

tion should undertake to set out in detail in what such carelessness, recklessness and culpable negligence consisted.' *State* v. *Watson,* 216 Mo. 420 (115 S. W. 1011).''

The unlawful act charged in this information and relied upon by the prosecution is that the defendant ''did operate said automobile   *   *   *   in a reckless and careless manner.'' This wrongful act in and of itself is not a felony. The syllabus in *People* v. *Townsend, supra,* reads as follows:

''In an information charging involuntary manslaughter committed while perpetrating an unlawful act not amounting to a felony, it is sufficient to allege the unlawful act with sufficient particularity to identify it, and then to charge that as a consequence the defendant caused the death of the deceased, and there is no need to aver in detail the specific acts of the accused.''

The foregoing should not be construed to mean that it is always sufficient to charge a statutory offense in the words of the statute alone. The accused has the constitutional right to be informed of the nature of the charge brought against him. Undoubtedly this includes the right to have a definite statement of the time, place, and manner of committing the offense, and likewise a definite statement of the charge itself. Beyond this the details are proper as matters of evidence but are nonessentials to the information. The information in this case specifically charges the time, the place, and the manner in which the alleged negligent homicide was committed, the recital being that it was accomplished by the defendant by wilfully, feloniously, and wantonly driving his automobile into and against the automobile of the deceased, Alfred Larson, in a reckless and

careless manner, thereby causing the death of said Larson. It may be conceded it would have been better pleading had the prosecuting attorney set forth this phase of the charge more specifically, but we are of the opinion that his failure to do so has not prejudiced the defendant. The constitutional right of the accused is "to be informed of the *nature* of the accusation." We think the information satisfies this requirement. A careful consideration of the record convinces us that the defendant was not surprised at the trial of the case, and that all of the available witnesses as to this phase of the alleged offense were before the court. There was no application for a continuance. The information in *People* v. *Ryczek*, 224 Mich. 106, charges the same offense in substantially the same manner. There, as here, it was charged that the defendant was under the influence of intoxicating liquor, but Ryczek was convicted on the theory that he was driving "without keeping a lookout as to where he was going." The information in that case was held to be sufficient. The holding there should be controlling here and this information likewise held to be sufficient.

Error is assigned on the ruling of the circuit judge whereby the prosecuting attorney was allowed to ask one of the people's witnesses, Frank Salo, if on the evening of the accident he had some drinks of moonshine whisky at Billy Sousa's Bingo Shop in Negaunee. Salo had ridden from Ishpeming to Negaunee with the defendant in the latter's automobile earlier in this same evening; and these two were at Sousa's place together. The witness admitted that he had "about three drinks there," but he also testified that he did not see the defendant take any drinks. Salo was not with the defendant at the time of the accident. Not being an eyewitness, the people were not

obliged to call him. There was no proof that the defendant drank any liquor on the night in question; but he was charged with driving an automobile while intoxicated, and the irrelevant and immaterial testimony that the people's witness, who was with the defendant during the evening some time before the accident, had been drinking moonshine whisky, was highly prejudicial. It is true that in so far as the charge was based upon driving an automobile while intoxicated, it was finally withdrawn from the consideration of the jury; but this only rendered the testimony all the more irrelevant but none the less prejudicial.

The most important question presented in this record is the constitutionality of Act No. 98, Pub. Acts 1921, under which this prosecution is brought. The act is assailed on the ground that it does not definitely define any offense. It is asserted that one convicted thereunder is deprived of his liberty without due process of law and is deprived of the equal protection of the law.

The wording of some portions of the act is subject to criticism, but the intent and purpose of the legislature is plainly indicated. Notwithstanding it is provided that the jury "may in its discretion render a verdict of guilty of negligent homicide," clearly it was not intended by this portion of section 2 to vest a discretionary power in the jury to convict or acquit irrespective of the facts established by the proof. The statute should not be so construed. It is made plain by section 3 that the legislature intended to permit it to be determined as a question of fact in each case as to whether the defendant was driving at an immoderate rate of speed. Because section 3 provides that what constitutes driving at an immoderate rate of speed is a question of fact, it is

asserted the court cannot define the offense or properly charge the jury, but instead what constitutes an essential element of the offense is to be fixed by the jury rather than by the terms of the statute itself. The criticism is made that this renders the statute so uncertain and indefinite that one cannot know whether his course of conduct in this particular is lawful or unlawful, and that driving a vehicle at a given rate of speed may be found criminal by one jury and entirely lawful by another. This criticism overlooks the fact that notwithstanding the jury determines as a question of fact from the proof whether the defendant under all the circumstances of the particular case is guilty of driving at an immoderate rate of speed, it is still the duty of the court to instruct the jury as to the rules of law in the light of which the jury shall determine from the proof the existence or nonexistence of this element of the offense. The very nature of the offense sought to be prohibited prevents its definition by specific terms. What would constitute a careless, reckless, negligent or immoderate rate of speed in one locality, under certain conditions might well be found to be entirely proper in another place or under different conditions. This element of the offense cannot be defined by the use of exact terms but it does not follow that the offense may not be defined in terms sufficiently definite to meet the constitutional requirement.

"In creating an offense which was not a crime at common law, a statute must of course be sufficiently certain to show what the legislature intended to prohibit and punish, otherwise it will be void for uncertainty. Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when

possible. * * * It is not necessary to use technical terms, and the legislature may designate the offense by using words in common and daily use; and a penal statute is sufficiently certain, although it may use general terms, if the offense is so defined as to convey to a person of ordinary intelligence an adequate description of the evil intended to be prohibited." 16 C. J. pp. 67, 68.

We have many crimes defined by the use of words of general and flexible meaning, and in consequence thereof the existence or nonexistence of certain essential elements of these statutory offenses becomes a question of fact for the jury to determine from the proof in the case. Reference to only a few of the offenses of this character will suffice to suggest the extent of this type of statutes. The following are statutory felonies (references are to sections of Comp. Laws 1915): *Wilful, deliberate* and *premeditated* killing (15192); committing an assault with a *deadly weapon* (15207); assault with intent to do *great bodily harm* (15227); assault with a gun, etc., or other *dangerous weapon* (15228); *cruelly* and *unlawfully* punishing a child (15230); to go armed with an *offensive* and *dangerous* weapon or instrument concealed on one's person (15236); committing a *gross fraud* or *cheat* (15321); *malicious injury* to property (15331); abandonment of wife or children without *necessary* and *proper* shelter, food, etc. (7789); *lewd* and *lascivious* cohabitation (15467); use of *indecent* language, etc. (15533). Each of these and many others which might be added contain one or more essential elements of the statutory offense which is not specifically defined by the statute. In the instant case the charge is involuntary homicide committed by operating a vehicle at an immoderate rate of speed or in a careless, reckless, **or**

negligent manner. The statute does not define immoderate rate of speed or what constitutes carelessness, recklessness, or negligence. It is, therefore, argued that the statute does not define the crime. By the same process of reasoning the statute forbidding abandonment of a wife and children without providing necessary and proper shelter, food, etc., must fail because it does not specify or define what constitutes "necessary and proper shelter, food," etc. The same may be said of the statute against "cruelly and unlawfully punishing a child." Is it more difficult to define and have a jury determine as a fact what constitutes operating a vehicle at "an immoderate rate of speed" than what constitutes "cruelly punishing a child," or what in a given case constitutes "necessary and proper shelter, food," etc? Surely the offense in the instant case is as definitely defined as in the others. The standards applied by a jury in passing upon one case may differ from those applied in another case. This is no more than to say that one jury may require more or different proofs than another. In all criminal cases tried by a jury, it is the jury that determines what constitutes proof beyond a reasonable doubt, which is quite as indefinite and difficult of ascertainment as what constitutes "an immoderate rate of speed;" but the former enters into the determination of the guilt or innocence of every person charged with a crime. It is said every person has a right to know what acts are in violation of law; that there must be a definition of criminality. Here again it would seem that it is quite as easy for a well-minded person to determine whether he is operating his vehicle with reasonable care under the circumstances with which he is surrounded as to determine what is necessary and proper food and

shelter for his family considering their station in life, or what would constitute cruel punishment of one of his children. The question presented is not new. There is a conflict of authority as to the validity of statutes of this character. *State* v. *Lantz,* 90 W. Va. 738 (111 S. E. 766, 26 A. L. R. 894), holds that such acts are unconstitutional. In the note following this case (26 A. L. R. 897) and reviewing many authorities, it is said:

"It is generally held that statutes or ordinances providing that no person shall drive or operate any motor vehicle recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic, and use of the highways and the general and usual rules of the road, or so as to endanger the property, life or limb of any person, are not invalid on the ground that they are too vague, uncertain and indefinite to sustain a criminal conviction;" citing *Schultz* v. *State,* 89 Neb. 34 (130 N. W. 972, 33 L. R. A. [N. S.] 403, Ann. Cas. 1912C, 495); *State* v. *Schaeffer,* 96 Ohio St. 215 (117 N. E. 220, L. R. A. 1918B, 945, Ann. Cas. 1918E, 1137); *Schier* v. *State,* 96 Ohio St. 245 (117 N. E. 229); *Mulkern* v. *State,* 176 Wis. 490 (187 N. W. 190); *Maxon* v. *State,* 177 Wis. 379 (187 N. W. 753, 21 A. L. R. 1484).

The following authorities are to the same effect: *Ex parte Daniels,* 183 Cal. 636 (192 Pac. 442, 21 A. L. R. 1172); *State* v. *Goldstone,* 144 Minn. 405 (175 N. W. 892); *Gallaher* v. *State,* 193 Ind. 629 (141 N. E. 347, 29 A. L. R. 1059).

In *Gallaher* v. *State, supra,* numerous authorities are cited and reviewed and consideration given to the questions raised incident to this phase of the present case. In passing upon a like statutory provision, it is stated in *State* v. *Schaeffer, supra:*

"In short, the legislature wrote into the statute what has become known as the 'rule of reason' ever

since *Standard Oil Co.* v. *United States,* 221 U. S. 1 (31 Sup. Ct. 502, 34 L. R. A. [N. S.] 834, Ann. Cas. 1912D, 734), and *United States* v. *American Tobacco Co.,* 221 U. S. 106 (31 Sup. Ct. 632), were decided by the Supreme Court of the United States. In those cases the Supreme Court of the United States read into the statute the so-called 'rule of reason' holding that the anti-trust act really was not a denial of all restraint of trade, but only a denial of unreasonable restraint of trade. It would hardly be suggested that the Supreme Court of the United States read into the statute something that made the statute unconstitutional, or read into the statute something that made it so indefinite and uncertain that it was incapable of advising the public as to what was or was not an offense under it, or that made the statute practically unenforceable. And yet, by parity of reason, it is claimed in this case that the legislature, which wrote into the statute the same 'rule of reason,' thereby in effect nullified such statute, because of the indefiniteness and uncertainty of its terms. The contention is not sound."

Notwithstanding quotations from decisions of the United States Supreme Court which might seem to indicate the contrary, they are not applicable to a statute of this character; and by *Nash* v. *United States,* 229 U. S. 373 (33 Sup. Ct. 780), and the recent decision of Chief Justice Taft in *Cline* v. *Frink Dairy Co.,* 274 U. S. 445 (47 Sup. Ct. 681), the constitutionality of such enactments has been sustained. We quote from the *Cline Case:*

"On questions of confiscatory rates for public utilities, for instance, courts must examine in great detail the circumstances and reach a conclusion as to a reasonable profit. But this does not justify in such a case holding the average member of society in advance to a rule of conduct measured by his

judgment and action in respect to what is a reasonable price or a reasonable profit. It is true that, on an issue like negligence, *i. e.,* a rule of conduct for the average man in the avoidance of injury to his neighbors, every one may be held to observe it either on the civil or criminal side of the court. It is a standard of human conduct which all are reasonably charged with knowing and which must be enforced against every one in order that society can safely exist. We said in the *Nash Case* (p. 377):

" 'But apart from the common law as to restraint of trade thus taken up by the statute the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. "An act causing death may be murder, manslaughter, or misadventure according to the degree of danger attending it" by common experience in the circumstances known to the actor. * * * "The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct." 1 East P. C. 262.'

"Following the authority in the *Nash Case,* we sustained in *Miller* v. *Oregon, per curiam,* 273 U. S. 657 (47 Sup. Ct. 344), a conviction of manslaughter under a statute of Oregon, which made the following rule of conduct a standard of criminality:

" 'Every person operating a motor vehicle on the public highways of this State shall drive the same in a careful and prudent manner, not to exceed thirty miles per hour, and within the limit of incorporated cities and towns not to exceed twenty miles per hour, and at intersections and schoolhouses not to exceed twelve miles per hour, and in no case at a rate of speed that will endanger the property of

another, or the life or limb of any person.' (Ch. 371,
General Laws of Oregon, 1921, § 2, subd. 16.)

"The indictment was framed under the last clause
of this statute. Such standard for the driver of an
automobile on a highway is one to which it is neither
harsh nor arbitrary to hold those criminally who
operate such a possibly dangerous instrument of
locomotion, and who are or ought to be aware of
what degree of care is necessary to avoid injury to
others under the conditions that prevail on a high-
way."

While it is desirable that criminal statutes be
expressed in language as specific as is possible con-
sidering the subject-matter of the legislation, neither
in the Constitution nor elsewhere is there a require-
ment that the impossible should be accomplished.
With many types of crimes it is not possible to de-
scribe or define them by the use of specific terms and
still have the statute sufficiently broad and inclusive
to cover the whole class of offenses at which it is
aimed. A maximum rate of speed may be fixed and
other specific acts incident to operating vehicles may
be forbidden by statute, but it is not humanly pos-
sible to cover by express terms of a statute every
type of careless, negligent, or wilful operation of a
vehicle resulting in a culpable homicide except by
the use of general terms such as are found in this
statute. Driving an automobile at a rate of speed
well within a maximum which might be specified in
the statute would under certain circumstances be
grossly negligent. Certainly there must be some
limitations upon and control over misconduct of this
character provided in our criminal statutes, and the
acts sought to be prohibited are so varied in their
details that it is not possible to describe and include
them in the statute except by the use of general

terms. The rights of the accused are not thereby prejudiced. He may gain detailed information by demanding an examination, and under the criminal code now in force he has a right to a bill of particulars by which he may be informed of the details of the charge brought against him. His constitutional right to be advised of the nature of the accusation brought against him is fully respected. This act is not subject to the constitutional objection here urged.

The contention of the appellant that contributory negligence should be a defense to a statutory charge of negligent homicide is not well founded. *People v. Campbell*, 237 Mich. 424; *State v. Campbell*, 82 Conn. 671 (74 Atl. 927, 18 Ann. Cas. 236, 135 Am. St. Rep. 293).

Other errors are assigned in the record, but they are not likely to arise incident to a retrial of the case and need not be discussed here.

For the reason hereinbefore indicated the conviction should be set aside and a new trial ordered.

WIEST and SHARPE, JJ., concurred with NORTH, C. J.

FEAD, J. (*for reversal*). I cannot agree that an information for negligent homicide is sufficient which sets up the charge in the language of the statute and does not specify the acts of negligence relied upon as the cause of death.

In a civil suit a declaration so framed would not sustain a judgment for damages. Aside from constitutional requirements and precedents in the law of indictments, it is not in harmony with our doctrine of natural rights that a person may be deprived of his liberty on less particularity of accusa-

tion than is required to cause him to respond in money.

The information was for involuntary manslaughter. The most concise and precise statement of the rule governing such informations, which I have been able to discover after much research, is that of Mr. Justice Wiest in *People* v. *Townsend,* 214 Mich. 267 (16 A. L. R. 902), quoted in *People* v. *Ryczek,* 224 Mich. 106, in Joyce on Indictments (2d Ed.), § 518, and widely cited:

"The distinction between involuntary manslaughter committed while perpetrating an unlawful act not amounting to a felony, and the offense arising out of some negligence or fault in doing a lawful act in a grossly negligent manner and from which death results, must be kept in mind upon the question of pleading. In the former case it is sufficient to allege the unlawful act with sufficient particularity to identify it, and then to charge that as a consequence the defendant caused the death of the deceased, and there is no need to aver in detail the specific acts of the accused; but in case of manslaughter committed through gross or culpable negligence, while doing a lawful act, the duty which was neglected or improperly performed must be charged as well as the acts of the accused, constituting failure to perform or improper performance."

The unlawful act alleged in the information in the *Townsend Case* was driving an automobile while intoxicated. At bar, the unlawful act upon which conviction was predicated was driving an automobile on the left of the center of the highway. The act was not alleged or identified in the information in any way. The general statement that defendant "did operate said automobile * * *\ in a reckless and careless manner" was not the allega-

tion of an unlawful act, but was the averment of a conclusion, an ultimate characterization of the act of driving, which, however, did not indicate whether the negligence consisted of an unlawful act or the careless performance of a lawful act. Eliminating the specific charges of negligence upon which the testimony failed and which were withdrawn from the jury, the information here was not sufficient to support a charge of manslaughter by negligence in driving on the left side of the road, within the test of the *Townsend Case*. Therefore, it was not sufficient to charge the analogous crime of negligent homicide under common-law rules of pleading. The information is sustainable, if at all, only by virtue of 3 Comp. Laws 1915, § 15751:

"When the offense charged has been created by any statute, or the punishment of such offense has been declared by any statute, the indictment shall, after verdict, be held sufficient to warrant the punishment prescribed by the statute, if it describe the offense, in the words of the statute."

This statute is not new nor its construction doubtful. Designed to eliminate some of the redundancy and finespun technicalities of common-law indictments, it cannot be extended to omit essentials of the offense or allegations necessary to fulfil the constitutional right of the accused "to be informed of the nature of the accusation." Its scope has been considered in many cases and the result summed up in *People v. Glazier,* 159 Mich. 528, 537:

"It is generally sufficient to charge a statutory offense in the language of the statute, and to state the crime charged, and not the evidence thereof. The principal, if not the only, exceptions to this rule are where the statutory definition of the offense does

not include all of its elements, or 'where the words of the statute may by their generality embrace cases which, while falling within its literal terms, are not within its meaning or spirit.' "

Both in this State and elsewhere it is the rule that where a statute uses general or generic terms in describing an offense, does not sufficiently define the crime or set out all its essential elements, or where a charge in the language of the statute charges a mere legal conclusion, an information which alleges the crime in the words of the statute is not sufficient, but a more particular statement of facts is necessary. 14 R. C. L. p. 187; 31 C. J. pp. 709–713; *People* v. *Hamilton,* 71 Mich. 340. See, also, *Enders* v. *People,* 20 Mich. 233; *People* v. *Marion,* 28 Mich. 255; *Brown* v. *People,* 29 Mich. 232; *People* v. *Olmstead,* 30 Mich. 431; *Chapman* v. *People,* 39 Mich. 357; Joyce on Indictments (2d Ed.), § 459 *et seq; United States* v. *Reese,* 92 U. S. 214.

Negligence is a general word. Its legal definition is about as indefinite as the word itself. It has not such concrete significance in the language that it charges, to general understanding, a definite act or omission. Depending upon circumstances, it requires statement of particular facts to disclose its elements in a given case, and the specific acts of negligence should be stated in an information. Charging an act as having been done negligently, without specifying in what the negligence consisted, is no more enlightening than would be a blanket charge of general fraud or crime. An information in the language of the statute would no more inform an accused of the nature of the accusation than would a charge of false pretenses without stating the pretenses, or fraud without stating the repre-

sentations or means, or crime without designating the offense.

It can hardly be gainsaid that the constitutional requirement is one of fairness, that the accusation shall be made so plain that an accused of ordinary intelligence may comprehend it, and so specific that he may fairly prepare his defense. An information for negligent homicide in the language of the statute throws upon the accused the burden of canvassing the realm of statutory regulations covering the operation of vehicles and of being prepared to defend against claim of breach of any or all of them; and, having exhausted the statutes, the accused must go further and imagine and prepare to meet all the ways in which ingenious counsel might conceive that he failed to act as counsel might claim a reasonably prudent person would have acted under the circumstances. It is easy for the people to specify the negligence. The State should not be permitted to lie in wait for an accused.

Nor, if the specification of negligence need not be set up in the information, can the accused be assured of knowledge of the precise charge by demanding an examination. It is common practice for prosecutors to present only sufficient witnesses at the examination to hold the accused and to save the telling evidence for the trial. An information in general terms would offer an opportunity for grossly unfair advantage to be taken of the accused through suppression of the claims of negligence in the information and on the examination and their disclosure without warning on the trial. Aside from the unfairness of the general information, it is, of course, the rule that failure to demand an examination does not cure a defective information. The defendant is not called upon to act nor to defend him-

self until he has been confronted by a proper charge
of a specific offense alleged in such a way as to fulfil
the constitutional test.

In my opinion, the offense provided by this statute
is peculiarly one which demands and ought to de-
mand special particularity of statement to inform
the accused of the nature of the accusation. The
statute goes a long way in imposing criminal lia-
bility on the commission of what may be innocent
and unintentional acts. It expressly eliminates wil-
fulness and wantonness as elements of the crime, and
involves no suggestion of moral turpitude. It even
does not require that the accused shall have been
conscious that he was negligent. It sets up no def-
inite standard of conduct nor test of negligence. A
jury, after the accident has happened and from tes-
timony of what occurred, formulates a test of what
defendant should or should not have done and then
measures his conduct by it. Contributory negligence
is not a defense, and whatever care the defendant
may have used, or tried to use, his fate ultimately
hangs upon the variable standard arising out of
the personnel of the jury. The statute covers no
uncommon and unusual employment of dangerous
weapons or instrumentalities. It lowers over the
ordinary, everyday life of millions of people in pur-
suit of their necessary, lawful, and laudable voca-
tions and of proper and healthful pleasures. It
would be a reproach to our system of jurisprudence
if on accusation of such a crime the person accused
must wait until the testimony is presented in order
to ascertain the violation of law or the specific negli-
gence with which he is charged.

Nor can I agree that this is a place for the applica-
tion of 3 Comp. Laws 1915, § 14565, used in *People* v.
*Ryczek, supra,* which provides affirmance of convic-

tion unless, on the whole case, the court finds a miscarriage of justice. The issue has gone beyond Kalle Maki and his case, and is one of fundamental and constitutional rights of an accused to be informed of the nature of the accusation.

In my opinion, an information under the negligent homicide statute must state specifically the negligence which is relied upon as the cause of death.

Judgment reversed, and new trial ordered.

FELLOWS, CLARK, McDONALD, and POTTER, JJ., concurred with FEAD, J.

POTTER, J. (*concurring in reversal*). Defendant was arrested, informed against, and convicted of the crime of involuntary homicide under section 1, Act No. 98, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 15226 [2-4]), which provides:

"Every person who, by the operation of any vehicle at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of the crime of negligent homicide." * * *

No general warrants could lawfully issue at common law. Our Constitution has embodied that idea in very clear and express terms. *Robison* v. *Miner and Haug*, 68 Mich. 549. It provides that in every criminal prosecution the accused shall have the right to be informed of the nature of the accusation against him. Section 19, art. 2, Constitution of Michigan. It prohibits depriving anyone of life, liberty, or property without due process of law. Section 16, art. 2, Constitution of Michigan. No man's rights can be submitted, under a constitutional government, to the discretion of anybody. *In re Frazee*, 63 Mich. 396 (6 Am. St. Rep. 310); *Robison*

v. *Miner and Haug, supra.* General warrants and writs of assistance have no place in the criminal jurisprudence of this State. No man should live in a state of uncertainty as to whether he is a criminal or not. Every man has a right to know what acts violate and what do not violate the criminal law. General charges of criminality are insufficient. *Robison* v. *Miner and Haug, supra.* No one can be convicted unless he is clearly and unequivocally within the language of the statute alleged to be violated. There are no constructive criminal offenses. *United States* v. *Lacher,* 134 U. S. 624 (10 Sup. Ct. 625); *United States* v. *Bathgate,* 246 U. S. 220 (38 Sup. Ct. 269); *Fasulo* v. *United States,* 272 U. S. 620 (47 Sup. Ct. 200). It certainly would be dangerous if this statute, which provides for punishing the results of immoderate driving without defining what immoderate driving is and the results of driving in a careless, reckless or negligent manner without defining or naming the things which constitute careless, reckless, or negligent driving, were permitted to stand. What conduct, under this statute, is criminal, and what innocent? There is no definition of criminality. What is or is not criminal conduct is made to rest in the sound judgment or discretion of the court or jury. In one case upon a given state of facts defendant's conduct may be found to be criminal,—in another case, under the identical state of facts, defendant's like conduct may be found to be innocent, depending in each case upon the judgment, discretion, opinion, whim, or caprice of the court or jury. There is no certain rule of conduct, the violation of which constitutes criminality. Whether anyone is a criminal or not under an admitted state of facts ought not to rest upon the discretion of anyone. As said in *United States* v.

*Reese,* 92 U. S. 214, 221, approved in *James v. Bowman,* 190 U. S. 127 (23 Sup. Ct. 678) :

"It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department."

In this case the statute denounces all operation of vehicles at an immoderate rate of speed and all careless, reckless, or negligent operation, regardless of its nature, kind, or character, and leaves it to the court to step within this circle of proscribed conduct and determine, in the exercise of its sound judgment and discretion, what conduct is criminal and what is innocent. This certainly cannot, in a civilized community operating under a Constitution like that of Michigan, be done. As said in *Ware v. Branch Circuit Judge,* 75 Mich. 488 :

"No principle is more universally settled than that which deprives all courts of power to infer, from their judicial ideas of policy, crimes not defined by statute or by common-law precedents."

Suppose a man is arrested and informed against under this statute. With what is he charged? Is he charged with driving at night without proper lights, driving on the wrong side of the highway, driving at an excessive rate of speed, or driving while intoxicated? And upon what state of facts may he be convicted? What conduct, on the part of the defendant must be charged and proven before he can be convicted and sentenced? It seems to me to be established law that no one may be convicted of a crime unless he has violated some immutable

standard of personal conduct prescribed by the
State; that no statute is constitutional which au-
thorizes general conduct to be found criminal or in-
nocent in the discretion of the court.   There is, in
the statute under consideration, no fixed element
necessarily inhering in the transaction complained
of which stamps it with the unerring mark of crimi-
nality.   The legal rule by which guilt or innocence
is to be determined is not fixed and inflexible, but
depends upon the judgment and discretion of the
court or jury, and there are as many different stand-
ards of criminality as there are judges, courts, or
juries.   What is an immoderate rate of speed?   It
is a rate of speed too high or too low under all the
circumstances of the case.   Whether there was an
immoderate rate of speed in a particular case de-
pends upon the sound judgment and discretion of
the jury.   It is not driving at any specific rate—it is
such a rate as is immoderate, whether fast or slow.
The standard is not prescribed by statute.   Crimi-
nality may exist regardless of the rate of speed.
The jury must determine and fix this element of the
crime, if the defendant is charged with driving at an
immoderate rate of speed.   If defendant is charged,
in the language of the statute, with careless, reckless,
or negligent driving, whether he was careless, reck-
less, or negligent, likewise depends upon the sound
judgment and discretion of the court or jury.   There
is no fixed standard of conduct; no one knows or may
know whether he is violating the law or not at any
particular time.   Negligence is a want of ordinary
care, failure to exercise due care and caution, failure
in one's duty to observe that degree of care which
the law imposes for the protection of interests likely
to be injuriously affected by the want of it.   The
degree of care which the law imposes for the protec-

tion of the interests of others is reasonable care under all the circumstances of the case. Reasonable care is such care as the jury find an ordinarily prudent man would exercise under all the circumstances. In the last analysis, while the statute denounces driving at an immoderate rate of speed and driving in a careless, reckless, or negligent manner, there is no fixed, infallible, or certain standard of conduct, the failure to observe which is criminal, and the observance of which keeps one within the realm of innocence.

In *People* v. *Campbell,* 237 Mich. 424, 434, Mr. Justice WIEST said:

"The statute * * * leaves questions of whether the rate of speed was immoderate or operation of the vehicle careless, reckless or negligent to depend upon the particular circumstances of each case. It is an innovation in the law of homicide, departs from the doctrines of common-law manslaughter and carries its own yardstick for measuring culpability."

This yardstick is so ductile as to be easily elongated to include acts innocent in themselves or compressed to exclude most culpable conduct. There is no fixed standard of measurement at all. Defendant's conduct is measured by the flexible discretion of the court or jury. Such standard may shift with the veering currents of public sympathy or indignation. Law and fact, guilt or innocence, rest in the discretion of a court or jury. Unpopular defendants may be convicted and popular defendants acquitted for identical acts. This statute is well suited to be the instrument of arbitrary power. Its validity is consistent only with a government resting on personal discretion and not on fixed principles of law.

It may comport with tyrannical despotism, but not with constitutional liberty.

In *United States* v. *Sharp,* Pet. C. C. 118, 27 Fed. Cas. 1041, Mr. Justice Washington said:

''Laws which create crimes ought to be so explicit in themselves, or by reference to some other standard, that all men, subject to their penalties, may know what acts it is their duty to avoid.''

In *Chicago, etc., R. Co.* v. *Dey,* 35 Fed. 866 (1 L. R. A. 744), the question was before the court of the validity of a statute making it a criminal offense to charge more than a fair and reasonable rate for transportation. It is said:

''Section 23 provides that if any railroad company shall charge more than a fair and reasonable rate of toll, or make any unjust charge prohibited in section 2, it shall be deemed guilty of extortion, and, by section 26, be subject to criminal prosecution, with a large penalty. Now the contention of complainant is that the substance of these provisions is, that, if a railroad company charges an unreasonable rate, it shall be deemed a criminal, and punished by fine, and that such a statute is too indefinite and uncertain, no man being able to tell in advance what in fact is, or what any jury will find to be, a reasonable charge. If this were the construction to be placed upon this act as a whole, it would certainly be obnoxious to complainant's criticism, for no penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it. In Dwar. St. 652, it is laid down 'that it is impossible to dissent from the doctrine of Lord Coke, that acts of parliament ought to be plainly and clearly, and not cunningly and darkly, penned, especially in legal matters.' See, also, *United States*

v. *Sharp,* Pet. C. C. 122; *The Enterprise,* 1 Paine, 34; Bish. St. Cr. § 41; Lieb. Herm. 156. In this the author quotes the law of the Chinese penal code, which reads as follows:

" 'Whoever is guilty of improper conduct, and of such as is contrary to the spirit of the laws, though not a breach of any specific part of it, shall be punished at least forty blows; and when the impropriety is of a serious nature, with eighty blows.'

"There is very little difference between such a statute and one which would make it a criminal offense to charge more than a reasonable rate."

In *Tozer* v. *United States,* 52 Fed. 917, the language of *Chicago, etc., R. Co.* v. *Dey* was approved, and the court by Judge Brewer, later one of the Justices of the Supreme Court of the United States, said:

"In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty."

In *Railroad Commission of Indiana* v. *Railroad Co.,* 179 Ind. 255, 264 (100 N. E. 852), it is said:

"When the legislature undertook to define an offense and provide punishment therefor in this act, it should have expressed itself in plain and specific terms. 'Every man should be able to know with certainty when he is committing a crime.' *United States* v. *Reese* (1875), 92 U. S. 214. 'In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness

and certainty.' *Tozer* v. *United States* (1892), 52 Fed. 917. 'No penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it.' *Chicago, etc., R. Co.* v. *Dey* (1888), 35 Fed. 866, 876 (1 L. R. A. 744). An act which leaves the crime to be determined by the jury or any official body is void. A penal statute, to be enforceable, must be general in its scope and specific and certain in its provisions.''

In *State* v. *Comeaux,* 131 La. 930 (60 South. 620), it is said:

''The defining of crimes and the imposition of the penalties for their commission, devolve upon the legislature alone.''

In *State* v. *Mann,* 2 Or. 238, it is said:

''A crime or public offense is some act forbidden by law; and it is a well settled rule of law that no one can be punished for doing an *act,* unless it clearly appears that the *act* sought to be punished comes clearly within both the spirit and letter of the law prohibiting it. The *act* constituting the offense should be clearly and specially described in the statute, and with sufficient certainty, at least, to enable the court to determine, from the words used in the statute, whether the *act* charged in the indictment comes within the prohibition of the law.''

In *Brown* v. *State,* 137 Wis. 543, 548 (119 N. W. 338), it is said:

''It is a most fundamental canon of criminal legislation that a law which takes away a man's property or liberty as a penalty for an offense must so clearly define the acts upon which the penalty is denounced that no ordinary person can fail to understand his duty and the departure therefrom which the law attempts to make criminal.''

In 8 R. C. L. p. 58, it is said:

"In the exercise of its power to declare what shall constitute a crime or punishable offense, the legislature must inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain rule of conduct. Hence, the making of an unreasonable charge for services cannot be made criminal under a statute creating no test of reasonableness in this respect."

In *United States* v. *Cohen Grocery Co.*, 255 U. S. 81, 89 (41 Sup. Ct. 298, 14 A. L. R. 1045), it is said:

"The sole remaining inquiry, therefore, is the certainty or uncertainty of the text in question, that is, whether the words 'That it is hereby made unlawful for any person wilfully  *  *  *  to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries,' constituted a fixing by congress of an ascertainable standard of guilt and are adequate to inform persons accused of violation thereof of the nature and cause of the accusation against them. That they are not, we are of opinion, so clearly results from their mere statement as to render elaboration on the subject wholly unnecessary. Observe that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foreshadow or adequately guard against. In fact, we see no reason to doubt the soundness of the observation of the court below, in its opinion, to the effect that, to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury.  *  *  *

"That it results from the consideration which we have stated that the section before us was void for repugnancy to the Constitution is not open to question."

The Lever act, under consideration in the case last cited, prohibited no specific act. It declared it a penal offense to charge more than a reasonable price for necessary articles of life. Says Mott, Due Process of Law, p. 357:

"This would result in a different rule being applied by each jury according to their varying ideas of reasonableness, and it was preposterous to ask merchants to obey a law which they could not know."

In 12 C. J. p. 1203, it is said:

"A statute creating an offense is void for want of due process of law which fails to prescribe with reasonable certainty the elements of the offense."

In *Commonwealth* v. *Pentz*, 247 Mass. 500 (143 N. E. 322), it is said:

"Statutes which create crimes must be definite in specifying conduct which is commanded or prohibited. They must afford some comprehensive guide, rule or information as to what must be done or what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements. Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. *United States* v. *Brewer*, 139 U. S. 278, 288 (11 Sup. Ct. 538); *Commonwealth* v. *Badger*, 243 Mass. 137 (137 N. E. 261); *Commonwealth* v. *Atlas*, 244 Mass. 78, 82 (138 N. E. 243)."

A criminal statute is void which prescribes no fixed standard of conduct which it is possible to know (*International Harvester Co.* v. *Kentucky*, 234

U. S. 216 [34 Sup. Ct. 853] ; *Collins* v. *Kentucky,* 234 U. S. 634 [34 Sup. Ct. 924] ; *American Seeding Machine Co.* v. *Kentucky,* 236 ·U. S. 660 [35 Sup. Ct. 456]), or which fails to fix with reasonable certainty the elements of the offense, because violative of the due process clause of the State Constitution and the 14th Amendment of the Constitution of the United States.

In *Connally* v. *Construction Co.,* 269 U. S. 385 (46 Sup. Ct. 126), in discussing the criminal features of the Oklahoma "current wage" statute, it is said:

"The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.    *   *   * A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."

In *Cline* v. *Frink Dairy Co.,* 274 U. S. 445 (47 Sup. Ct. 681), the rule of *United States* v. *Cohen Grocery Co.,* 255 U. S. 81 (41 Sup. Ct. 298, 14 A. L. R. 1045), was approved, and the court said of the Colorado anti-trust statute:

"Such an exception in the statute leaves the whole statute without a fixed standard of guilt in an adjudication affecting the liberty of the one accused. An attempt to enforce the section will be to penalize and punish. all combinations in restraint of trade in a commodity when in the judgment of the court and jury they are not necessary to enable those engaged in it to make it reasonably profitable, but not otherwise. Such a basis for judgment of a crime would be more impracticable and complicated than the much simpler question in the *Cohen Grocery Case,* whether a price charged was unreasonable or exces-

sive. The real issue which the proviso would submit to the jury would be legislative, not judicial. * * * We are now considering a case of State legislation and threatened prosecutions in a State court where only the Fourteenth Amendment applies; but that amendment requires that there should be due process of law, and this certainly imposes upon a State an obligation to frame its criminal statutes so that those to whom they are addressed may know what standard of conduct is intended to be required."

In *Small Co.* v. *Refining Co.,* 267 U. S. 233 (45 Sup. Ct. 295), it is said of *United States* v. *Cohen Grocery Co., supra*: "The ground or principle of the decisions was not such as to be applicable only to criminal prosecutions." And hence it is said the rule of due process of law is the same in civil and in criminal cases. This is true in so far as compliance with the general law of the land is concerned. In civil suits for damages for negligence, the criterion is whether common social duty would, under the circumstances, have suggested more circumspect conduct. If it would, the defendant may be civilly liable, but in civil cases there is no such expressly declared constitutional mandate as in criminal cases requiring the accused to be informed of the nature of the accusation against him, which, as construed by the courts, means that an offense must not be so indefinitely described by statute that men must guess at its meaning, but that the essential elements of the offense must be stated in clear and definite terms. If it fails to do so it does not comport with due process of law. *Yu Cong Eng* v. *Trinidad,* 271 U. S. 500 (46 Sup. Ct. 619).

Applying the above rules to the statute under consideration, the statute under which the defendant was arrested, informed against, and convicted, fails

to inform defendant of the nature and cause of the accusation against him; forbids no specific or definite act or acts upon the part of defendant; confines the subject-matter of the investigation of defendant's criminality to no specific element essentially inhering in the transaction under consideration; does not enable the defendant to know or to ascertain from the complaint, warrant, or information filed against him, with what he is charged; does not enable defendant to prepare for his defense by procuring evidence to disprove that which is not specifically charged against him; throws out a net and denounces all immoderate, careless, reckless, or negligent driving and leaves it to the court to determine what conduct, upon the part of the defendant, falls within or without the general terms of the statute; permits the court or the jury to fix and determine the standard of conduct by which the criminality of defendant is to be determined rather than declaring such standard by the statute itself; is open to all the objections which have in the past been made against general warrants; leaves the question of the ascertainment of a legal element of the offense with which the defendant is charged to the discretion of the court or the discretion of the court and jury, instead of fixing and defining it and establishing it by a law itself. An essential element of the offense is to be fixed by men and not by law.

Driving at an immoderate rate of speed or in a careless, reckless, or negligent manner involves a choice of conduct, the exercise of human will. These things are expressly excluded from the section of the statute in question. Man does not choose between kinds of conduct without intending to do so. He exercises his will to execute that intent in driving faster than the legal limit, on the wrong side of the

road, without lights, while intoxicated, in violation of local ordinances, or in defiance of traffic signals. These acts involve the intent and the concurrence of the will of the actor—his choice to do or to avoid doing. They may be criminal under the second section of the statute. The concurrence of the will when it has the choice to do or avoid an act is the only thing that renders human conduct praiseworthy or culpable. 4 Blackstone Com., chap. 2. The State at great expense builds highways, licenses motor vehicles and drivers to operate them thereon, and by the section of the act in question provides for the conviction of homicide of such drivers for regrettable chance casualties arising from unexpected contingencies, involving no knowledge on the part of the accused, no choice of conduct to be observed to avoid such dire consequences.

Under parliamentary absolutism legislative enactments are law. The safeguards thrown around accused persons by the Constitution are perpetual prohibitions of tyrannical practices of old English criminal procedure. English cases do not involve the present question. Nothing can be due process of law which violates a constitutional right of the accused. 3 Baker, The Fundamental Law, 855.

A crime is an act committed or omitted in violation of a public law either forbidding or commanding it. 4 Blackstone Com., p. 5; *Slaughter* v. *People*, 2 Doug. 334.

"To declare what shall constitute a crime, and how it shall be punished, is an exercise of the sovereign power of the State, and is inherent in the legislative department of the government." *People* v. *Hanrahan*, 75 Mich. 611 (4 L. R. A. 751).

"Upon the legislature alone is conferred the power to fix the minimum and maximum of the punishment for all crimes." *People* v. *Smith*, 94 Mich. 644.

The statute here involved does not fix and define the essential elements of criminality.

"The only rule of law is one which appeals to an outside standard, that of general experience; and the application of it, by whatever tribunal made, calls for a preliminary determination of something for which there is no legal test—a matter of fact, and not a matter of law—namely, the behavior, in a supposed case, of the prudent man." Thayer, A Preliminary Treatise on Evidence at Common Law, 228.

This standard, yardstick, or criterion by which guilt or innocence is to be determined "is reposed in the varying conscience of jurors, who are to conduct the inquiry *ex post facto.*" *United States* v. *Bernstein,* 267 Fed. 295.

The fundamental conception of law as a rule of action excludes legislative enactments which fix and declare no standard of conduct, permit the jury to fix that standard, and then measure the conduct of the accused by it. It makes the jury judges of the law and renders it indefinite and uncertain. Nothing legally denounces conduct as criminal which does not fix and declare a rule of action—a standard of conduct—compliance with which is innocent, defiance of which is criminal. Law is for the court, facts for the jury. When an essential element of a criminal law, fixing and defining the standard of conduct, the rule of action—which may be innocent or criminal in the discretion of the jury—is fixed by the jury—the jury makes the law by which the accused is tried.

By the statute the ascertainment and fixing of the standard of conduct, the criterion by which the guilt or innocence of the accused is to be determined in each particular case, rests with the judicial department of government. It is only after such ever-

varying standard of conduct—resting, in each case, upon the discretion of the court or jury—has been fixed, that the tribunal may proceed to ascertain whether the acts and conduct of the accused comply with or violate that standard. When the judicial department fixes, as it must, in each case, the standard of conduct, the criterion by which the guilt or innocence of the accused is to be determined, it clearly exercises a legislative function. Our Constitution makes a tripartite division of all governmental powers. Section 1, art. 4. It declares that "no person belonging to one department shall exercise powers belonging to another." Section 2, art. 4. The statute under consideration attempts to authorize the judicial department to exercise a legislative function—to determine and fix an essential element, involved in each offense under it—in violation of the provisions of the Constitution above referred to. The statute violates section 19 of article 2, section 2 of article 4, and section 16 of article 2 of the Constitution of Michigan, and the 14th Amendment of the Constitution of the United States.

Precedents may be found to support any theory of tortious responsibility—where personal injury met with private vengeance, where a party accidentally killing another suffered the penalty of death, where a vehicle causing death was forfeited as a deodand; and many others—sustained upon the instinct of vengeance for injury or death. But for at least six centuries civilized men have drawn a distinction between accidents involving wantonness and wilfulness; and those resulting from acts unwittingly done; voluntary acts and involuntary acts; intentional acts and unintentional acts. The former were criminal, the latter not criminal. This statute bows to unthinking hysteria, reverses the concepts of

criminality supported by centuries of progress, reverts to those of the dark ages. It seeks to carve out a new field of criminal responsibility, from which wantonness or wilfulness are expressly excluded. It permits a jury to convict, when in its opinion, based upon a *post mortem* examination of the facts, the defendant did what it thinks he ought not to have done.

In *Miller* v. *Oregon,* 273 U. S. 657 (47 Sup. Ct. 344), no opinion was written, the court treated the question involved as one of State law. *Nash* v. *United States,* 229 U. S. 373 (33 Sup. Ct. 780), as construed in *International Harvester Co.* v. *Kentucky,* 234 U. S. 216 (34 Sup. Ct. 853), goes no further than to recognize that, in cases involving negligence between the two extremes of the obvious illegal and the plainly lawful there is a gradual approach and that the complexity of life makes it impossible to draw a line in advance without an artificial simplification that would be unjust. This is supported by the language, in relation to negligence in the opinion in *Cline* v. *Frink Dairy Co.,* 274 U. S. 445 (47 Sup. Ct. 681), quoted by Mr. Justice NORTH herein. As I understand the *obiter dicta* of these cases, they indicate that inasmuch as it is difficult to define or classify, in cases involving negligence, what conduct may be criminal and what innocent, if it were attempted or done, injustice might result in some cases, therefore the door should be opened for injustice in all cases.

As said in *Ex parte Siebold,* 100 U. S. 371, 376:

"An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment."

Defendant's conviction should be reversed and he discharged.

FEAD, CLARK, and McDONALD, JJ., concurred with POTTER, J.