PEOPLE *v.* FEDDERSON.

1. HOMICIDE—NEGLIGENT HOMICIDE—EVIDENCE.

Conviction of negligent homicide *held,* sustained by ample evidence, notwithstanding there was conflicting testimony as to minor details.

2. AUTOMOBILES—DUTY TO OBSERVE.

Motorist failed to exercise the amount of observation that a normal, prudent driver would have under the circumstances, which failure was the proximate cause of accident resulting in fatal injuries to 16- or 17-year-old boy who was crossing avenue 80 feet wide, where her testimony was that she did not see deceased until a split second before striking him as he either walked or stood in front of her car (CL 1929, § 4697, as amended by PA 1939, No 318).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur, Automobiles, § 825.
[1, 2] Homicide or assault in connection with negligent operation of automobile or its use for unlawful purpose or in violation of law. 99 ALR 756.
[2] 5 Am Jur, Automobiles, §§ 789, 790.
[3, 4, 6] 3 Am Jur, Appeal and Error, §§ 1052, 1053.
[4] 53 Am Jur, Trial, §§ 34, 76.
[5] 53 Am Jur, Trial, § 75.
[7] 5 Am Jur, Automobiles, § 831.
[8, 9] 58 Am Jur, Witnesses, § 621.
[10, 11] 39 Am Jur, New Trial, § 156 *et seq.*
[11] 3 Am Jur, Appeal and Error, §§ 829, 854, 894, 981, 1151.
[12] 3 Am Jur, Appeal and Error, §§ 262, 344.

3. CRIMINAL LAW—REMARKS BY COURT.

Trial court's statement in presence of veniremen that defendant's counsel was the third attorney she had to defend her in prosecution for negligent homicide *held*, not to have been prejudicial.

4. SAME—ADVICE TO DEFENDANT—CONTROL OF TRIAL.

Trial judge's advice to defendant in prosecution for negligent homicide that she should wait until questioned and not to volunteer anything was a proper instruction as the trial court has control of the trial (CL 1948, § 768.29).

5. SAME—QUESTIONING OF WITNESSES BY TRIAL COURT—NEGLIGENT HOMICIDE—OPERATION OF CAR WITHOUT LICENSE.

A trial court may question witnesses in the trial of a criminal case in the interests of justice, so long as he exercises circumspection and does not interpose his personal views, hence, in prosecution for negligent homicide wherein defendant had testified she had driven in the city of Detroit for 20 years without even acquiring a driver's license, it was not error for trial court to question passenger in her car if he knew defendant had no license and why he was not driving if he knew.

6. SAME—SENTENCE—UNNECESSARY GRUFFNESS OF COURT.

Unnecessary gruffness on part of trial court at time of sentencing defendant, convicted of negligent homicide, *held*, not to have constituted reversible error.

7. AUTOMOBILES—QUALIFICATIONS OF WITNESS—SPEED—EVIDENCE —QUESTION FOR JURY.

The weight and credibility of testimony of 17-year-old witness as to speed of car driven by defendant at time of alleged negligent homicide was for jury where he stated his father had driven prior to his death and witness had ridden in cars about once a week prior to the accident and his testimony as to speed of defendant's car was admitted without further objection as to qualifications of such witness as to such subject.

8. CRIMINAL LAW—CROSS-EXAMINATION—DISCRETION OF COURT.

The extent and control of cross-examination in a prosecution for crime is left largely to the sound discretion of the trial court.

9. SAME—NEGLIGENT HOMICIDE—CONDITION OF DEFENDANT—CROSS-EXAMINATION—DISCRETION OF COURT.

It was not an abuse of discretion for trial court in prosecution for negligent homicide to rule in the absence of the jury that

there had been sufficient cross-examination of witness as to condition of defendant by his statement that aside from being nervous and upset, she appeared perfectly normal, where there was other testimony later of a strong odor of liquor on defendant's breath and while the recall of the witness was asked, he had been excused and no continuance was requested and defendant's attorney was unable to locate such people's witness.

10. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

In order to obtain a new trial upon the ground of newly-discovered evidence it should be shown that the evidence, and not merely its materiality, be newly discovered; that the evidence be not cumulative merely; that it be such as to render a different result probable on a retrial of the cause and that the party could not with reasonable diligence have discovered and produced it at the trial.

11. SAME—NEWLY-DISCOVERED EVIDENCE—CUMULATIVE CHARACTER—DILIGENCE.

Denial of motion for new trial on the basis of newly-discovered evidence was not error where such evidence was to a great extent cumulative, it is not shown that it could not have been discovered with equally diligent efforts before the trial and it is highly improbable that its introduction would result in a different verdict were a new trial granted.

12. CRIMINAL LAW—NEGLIGENT HOMICIDE—QUESTIONS REVIEWABLE—SAVING QUESTION FOR REVIEW—AUTOMOBILES—SPEED.

Question as to error in admission of testimony as to speed of defendant's car at points remote from scene of fatal accident for which defendant was charged with negligent homicide is not determined, where no objection was taken to its admission.

Appeal from Recorder's Court for City of Detroit; Murphy (George T.), J. Submitted January 12, 1950. (Docket No. 74, Calendar No. 43,559.) Decided March 1, 1950. Rehearing denied April 3, 1950.

Veronica Fedderson was convicted of negligent homicide. Affirmed.

*Bland A. Pugh,* for appellant.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Michael A. Guest,* Assistant Prosecuting Attorney, for the people.

Butzel, J. Veronica Fedderson was charged with negligent homicide and was found guilty by a jury. She was driving in a westerly direction along East Jefferson avenue in the city of Detroit, between the cross streets of Marlborough and Chalmers at about 3 :45 in the afternoon of September 22, 1944, a clear, dry day. The avenue is 80 feet wide at that point and she was in the lane immediately north of the westbound streetcar tracks. The deceased, a boy 16 or 17 years of age, was walking across East Jefferson avenue apparently in a southwesterly direction, although some testimony indicates that he was crossing in a northerly direction. He was walking rather slowly with his head bowed and appeared engaged in "deep thought." He looked up and stopped when he saw defendant's automobile. He thereafter either stood still, as some of the testimony indicates, or took a step backward and then forward in indecision. The testimony is conflicting as to whether defendant applied her brakes. She did not blow her horn. There were no skid marks on the pavement. There is some evidence that she began to swerve to the right. The left front fender struck the deceased and he was thrown for a distance of 10 feet. Defendant's vehicle slowed down momentarily after the fatal impact and then leaped forward, struck 2 cars near the right curb at the intersection and came to a halt against an iron pole. The testimony of the eyewitnesses regarding defendant's speed before striking deceased was con-

flicting and varied from a minimum of 20 to 25 miles to a maximum of 40 to 50 miles per hour.

A few days after the accident, with a full warning of her legal rights, defendant made a statement to the prosecutor in the presence of a stenographer. She stated and emphatically repeated that she did not see the deceased pedestrian until she hit him and that the steering wheel then flew out of her hands. The entire statement there made was admitted into evidence without objection. During the trial defendant testified that she did not see the deceased until a split second before striking him; that a car directly ahead of her turned right a short time before the accident occurred; that she put her foot on the brake as soon as she saw the deceased and started to swerve, but that Joseph O'Leyar, a passenger in her car, lunged for the emergency brake located under the dashboard on the far left side of the car and in so doing pushed her foot off the brake, though she still retained the wheel; that after she returned to position O'Leyar screamed that she was going to hit a car and again reached over, this time knocking her against the left door as well as dislodging her foot from the brake. When defendant was asked why she did not mention O'Leyar's purported actions at the time she made her statement to the prosecutor, she testified that she wanted to give O'Leyar an opportunity to tell about them. She further testified that she was not sworn to tell the truth in the prosecutor's office though she did so, merely omitting to relate her passenger's actions; that at the time she had not yet seen her lawyer.

O'Leyar categorically denied that he attempted to grab the emergency brake.

Defendant contends that the verdict was contrary to the great weight of the evidence and that the trial court erred in refusing to grant a new trial on that

ground. While the testimony conflicts as to the details, there is ample evidence to sustain the conviction. Defendant had the duty of maintaining a proper lookout ahead and of operating her vehicle in a manner that would enable her to stop in the assured clear distance.* Did she perform her duty? The day was clear and visibility was good. According to most of the testimony, the deceased must have crossed in front of defendant's automobile before he was struck. Even had he been crossing from south to north, he was not moving rapidly and at the time of the impact was either standing still or he took a step backward and forward, but remained in relatively the same position. In all events he was directly in the path of defendant's car and yet, as she testified, she did not see him until a split second before striking him. The record supports a finding that she failed to exercise the amount of observation that a normal, prudent driver would have under the circumstances, and that this failure was the proximate cause of the accident.

Defendant contends that the remarks and conduct of the trial judge were prejudicial. Before the jury was impanelled, defendant's counsel of record and apparently her second counsel in the case appeared and in seeking to be excused informed the court that the previous evening he was told that there was another counsel retained. After some discussion with the defendant, regarding what arrangements were to be made concerning her defense, he reported to the court that she had succeeded in retaining another attorney. The court, apparently in the presence of some veniremen, stated that that was 3 she had and inquired if the new counsel was prepared to proceed. The court then recessed and after lunch the jury was chosen. We are unable to see anything prejudi-

* See CL 1929, § 4697, as amended by PA 1939, No 318 (Stat Ann 1946 Cum Supp § 9.1565).—Reporter.

cial in the statement of the number of lawyers retained.

During the trial the judge advised the defendant to wait until questioned and not to volunteer anything. The trial court had control of the proceedings (CL 1948, § 768.29 [Stat Ann § 28.1052]) and properly instructed the defendant.

The defendant testified that she had been driving in the city of Detroit for 20 years without ever acquiring a driver's license. The court asked if the passenger in the car knew that defendant had no license and why he was not doing the driving if he knew. The court may question witnesses in the interests of justice, so long as he exercises circumspection and does not interpose his personal views. *People* v. *Salem,* 224 Mich 114; *People* v. *Moore,* 306 Mich 29.

The other alleged prejudicial conduct of the court occurred at the time of sentencing when he displayed an unfriendly attitude toward her. While gruffness is unnecessary no authorities have ever been called to our attention which hold remarks then made to be error.

It is contended that the trial court erred in allowing witness Theodore Freels to testify concerning the speed of defendant's car just prior to the impact, as he was not sufficiently qualified. The defense objected to the question of speed and the prosecutor stated that he would further qualify the witness. Thereupon Freels testified that his father drove prior to his death, that the witness rode in cars about once a week prior to the accident and that he was 17 years old. The court then allowed the prosecution to interrogate as to speed, and the defense made no further objection. On cross-examination the boy testified that on 8 occasions about 3 years before trial he had driven a car for an aggregate of about 40 miles. While the witness may not have

been as accurate and reliable a judge of speed as persons with more driving experience, he was sufficiently qualified to testify, the weight and credibility of such testimony being left to the jury. *Tyler* v. *Weed,* 285 Mich 460; *Jenks* v. *County of Ingham,* 288 Mich 600.

Defendant asserts that the court erred in refusing to allow recall of witness White for further cross-examination in order to ascertain whether he smelled liquor on defendant's breath when he was seated next to her in the police patrol car after the accident.    White, a prosecution witness, had testified on cross-examination that defendant, with the exception of being nervous and upset and praying, appeared perfectly normal.    Two police officers later testified that they noticed a strong odor of liquor, not beer, on her breath.    The recall of White was asked, but he had been excused previously and had left the courtroom.    Defendant and O'Leyar both testified that prior to the accident they stopped at a tavern and that defendant drank a bottle and a half of beer during a long period when she partook of food and rested.    At the end of proofs, defense counsel informed the court that he was unable to locate White.    He did not ask for a continuance for that purpose.    The court excused the jury and ruled that there had been sufficient cross-examination of White regarding defendant's condition.    The extent and control of cross-examination is left largely to the sound discretion of the court.    *People* v. *Watson,* 307 Mich 596.    The witness' statement that defendant appeared normal adequately covered the question raised, and further testimony to the same effect would have been merely cumulative.    It is not shown that White, had he noticed an odor on defendant's breath, could have distinguished between that of beer and liquor.    There is nothing to indicate an abuse of discretion or that there was error

in the ruling that the witness, whom the defense counsel stated he was unable to locate, could not be subjected to repeated cross-examination. *People v. Hossler,* 135 Mich 384.

The defendant alleges that the court erred in denying a new trial on the basis of newly-discovered evidence. In *People* v. *Inman,* 315 Mich 456, we said (quoting from *Canfield* v. *City of Jackson,* 112 Mich 120):

"To entitle one to a new trial upon this ground it should be shown: First, that the evidence, and not merely its materiality, be newly discovered; second, that the evidence be not cumulative merely; third, that it be such as to render a different result probable on the retrial of the cause; fourth, that the party could not with reasonable diligence have discovered and produced it at the trial."

The evidence offered is to a great extent cumulative and it is not shown that it could not have been discovered with equally diligent efforts before the trial. It is highly improbable that its introduction would result in a different verdict were a new trial granted.

Another ground for reversal asserted is that the court erred in admitting testimony of the speed of defendant's vehicle at points remote from the scene of the accident. We need not decide this as there was no objection taken to its admission.

Other claims of error have been considered but have not sufficient merit to require discussion.

The judgment of conviction is affirmed.

BOYLES, C. J., and REID, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.