PEOPLE v TRAUGHBER

Docket No. 81206. Argued November 1, 1988 (Calendar No. 3). De-
    cided April 19, 1989.
    David Traughber was convicted following a bench trial in the
    Wayne Circuit Court, Thomas Roumell, J., of negligent homi-
    cide. The Court of Appeals, SHEPHERD, P.J., and GRIBBS and
    R. R. LAMB, JJ., affirmed in an unpublished opinion per curiam
    (Docket No. 88613). The defendant appeals, alleging that the
    information regarding negligent homicide was insufficient to
    allow him to present an adequate defense and that he was not
    held to the correct standard of care.
        In an opinion by Chief Justice RILEY, joined by Justices
    LEVIN, CAVANAGH, and ARCHER, the Supreme Court held:
        The information, in addition to evidence presented during
    the preliminary examination, did not prejudice the defendant,
    but rather offered him adequate notice of the acts of negligence
    of which he was charged. However, while the trial court identi-
    fied the correct standard of care, that of a reasonable person, it
    failed to apply the standard to the emergency situation which
    confronted the defendant. The defendant reacted to, rather
    than created, an emergency. His conduct cannot be said to have
    been contrary to that of an ordinarily prudent person under
    similar circumstances.
        1. Generally, it is sufficient to charge a statutory offense in
    the language of the statute. An information must be specific
    because it affords the defendant due notice of the charges and
    protection against double jeopardy should there be a retrial.
    The dispositive question is whether a defendant is provided
    sufficient notice so as to put forth an adequate defense. The
    purpose of a preliminary examination is to determine whether
    a crime has been committed and, if so, whether there is
    probable cause to believe that the defendant committed it.
    During a preliminary examination, the prosecution is not re-

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 341-344; Indict-
    ments and Informations §§ 66 et seq.
What amounts to negligence within meaning of statutes penalizing
    negligent homicide by operation of motor vehicle. 20 ALR3d 473.

quired to prove that the defendant was guilty beyond a reasonable doubt, but it must present evidence to establish each element of the offense, or evidence from which those elements may be inferred. An information for negligent homicide should set forth the specific acts of alleged negligence to inform an accused of the nature of the accusation. In this case, because the information merely charged the defendant in the language of the negligent homicide statute, it was insufficient. However, while insufficient, it did not prejudice the defendant. The information, coupled with the evidence presented at the preliminary examination, provided the defendant with adequate notice of the acts of negligence charged.

2. The applicable standard of care in cases of negligent homicide is that of a reasonable person. The prosecution must prove beyond a reasonable doubt that the defendant was guilty of ordinary negligence, defined as want of reasonable care, i.e., failing to do what an ordinarily sensible person would have done under the conditions and circumstances existing at the time of an accident. Every person driving upon the highways is bound to exercise reasonable care and caution to prevent injury to others. In this case, the trial court identified and correctly applied the proper standard of care for determining whether the defendant's conduct evidenced want of reasonable care under all the circumstances. However, the court failed to apply the standard to the facts supported by the record, and its conclusion that the defendant created, rather than confronted, an emergency was error. In emergency situations, a driver is not to be held accountable for misjudgment; even where mistaken, the driver will not be deemed guilty of negligence unless the choice of action is that which no ordinarily prudent person would have taken under similar circumstances.

Reversed.

Justice BOYLE, joined by Justices BRICKLEY and GRIFFIN, dissenting, stated that the trial court held the defendant's conduct to the correct standard of care, the reasonable-person standard, and considered all the circumstances that confronted the defendant when evaluating his conduct. Rather than applying the sufficiency of the evidence standard in reviewing the evidence in this case, the majority simply has substituted its own view of the evidence. On the basis of the record, a rational trier of fact could have found the elements of negligent homicide beyond a reasonable doubt. The question is one of fact, and an appellate court may not reverse the finding of guilt by a trial judge so long as a reasonable judge could have found guilt beyond a reasonable doubt.

1. CRIMINAL LAW — INFORMATION — STATUTORY LANGUAGE.

Generally, it is sufficient in an information to charge a statutory offense in the language of the statute; the dispositive question where a challenge to the specificity of an information is raised is whether the defendant is provided sufficient notice so as to put forth an adequate defense.

2. CRIMINAL LAW — NEGLIGENT HOMICIDE — STANDARD OF CARE.

The applicable standard of care in cases of negligent homicide is that of a reasonable person; in emergency situations, a driver is not to be held accountable for misjudgment; even where mistaken, the driver will not be deemed guilty of negligence unless the choice of action is that which no ordinarily prudent person would have taken under similar circumstances.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Criminal Division, Research, Training and Appeals, and *Janice M. Joyce Bartee* and *Janet Napp*, Assistant Prosecuting Attorneys, for the people.

*Eric J. Colthurst, P.C.*, for the defendant.

RILEY, C.J. The issues presented in this case are whether the information for negligent homicide was sufficient to allow the defendant to adequately present a defense against specific acts of negligence, and whether the defendant was held to the correct standard of care.

We find that the information, coupled with the preliminary examination, did offer the defendant adequate notice of the acts of negligence for which he was being charged. However, we further find that while the trial court identified the correct standard of care, that of a reasonable person, the court failed to apply the reasonable-person standard to the emergency situation which confronted the defendant. Therefore, we reverse the conviction of David Traughber.

### FACTS AND PROCEEDINGS

After waiving his right to a jury trial, defendant was convicted in the Wayne Circuit Court of negligent homicide, MCL 750.324; MSA 28.556. The judge sentenced defendant to three years probation, with the first three months to be served in the county jail.[1]

The accident occurred at approximately 12:15 A.M. on December 22, 1984, on Denton Road, a dark, unlighted two-lane road with a 45 MPH speed limit, in rural Canton Township, Wayne County.

Defendant was traveling south on Denton Road at approximately 35 MPH, an uncontested fact, when he noticed the oncoming headlights of Linus Parr's automobile approximately three-quarters of a mile in front of him. Mr. Parr testified that he was traveling between 45 and 50 MPH. As the two cars approached each other, each in its respective lane, defendant suddenly saw a large metal sign, later identified as a real estate sign, lying flat on the road. The defendant, now approximately thirty feet from the oncoming car, was faced with a split-second decision in an attempt to avoid the sign. Judging that he had enough space between himself and Mr. Parr's automobile, the defendant swerved to the left, into the northbound lane, to go around the sign. Upon seeing defendant's car enter his lane and assuming it would either continue in the left lane or go completely off the road, Mr. Parr swerved his car into defendant's lane, the southbound lane. Simultaneously, as Mr. Parr was turning into the southbound lane, the defendant, now around the sign, was returning into his own lane. The two cars collided head-on just inside defen-

---

[1] Other conditions of probation require submission of the defendant to an alcohol therapeutic organization for six months upon termination of his three-month confinement, restitution to the deceased's family in the amount of $4,358.33, and restriction of the defendant's driving privileges for the first year of probation.

dant's lane, the southbound lane.[2] Rochelle Richmond, who was sitting in Parr's passenger seat, was fatally injured. Mr. Parr and the defendant, as well as Jennifer Sellers, who was riding in the back seat of Mr. Parr's car, and Irene Baker, who was riding in the passenger seat of the defendant's car, received relatively minor injuries.

The Canton police arrived moments after the accident. Defendant was administered a preliminary breath test at the scene of the accident which showed a blood-alcohol level of 0.05 percent. After being taken to the Canton Police Department, defendant was administered two more Breathalyzer tests, one at 1:12 A.M. and another at 1:23 A.M. Each time the result was a blood-alcohol content of 0.04 percent.[3] Defendant was then charged with negligent homicide[4] and operating a motor vehicle without a valid license.[5]

Defendant waived his arraignment, and a preliminary examination was conducted on February 14, 1985. After a bench trial, defendant was acquitted of operating a motor vehicle without a valid license, but was convicted of negligent homicide. The Court of Appeals affirmed the conviction

---

[2] Both drivers testified that the accident occurred just within the southbound lane. Linus Parr on direct examination said his car was one or two feet into the southbound lane when the accident occurred. Defendant Traughber testified that he was three feet into "my lane" at the time of impact.

We acknowledge, however, that the police officer who reconstructed the accident testified that he believed the accident occurred in the northbound lane on the basis of gouge marks in the road. The police officer admitted that this was the only basis for his testimony, and he acknowledged that the testimony of the two drivers involved was that the accident occurred in the southbound lane.

[3] MCL 257.625a(3)(a); MSA 9.23251(1)(3)(a) provides: "If there was at the time 0.07% or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor."

[4] MCL 750.324; MSA 28.556.

[5] MCL 257.904a; MSA 9.2604(1).

in an unpublished opinion per curiam.[6] On March 22, 1988, we granted leave to appeal.[7]

I

Defendant's first assertion is that the information for negligent homicide failed to specify the acts of negligence for which he was charged, and that due to this inadequate notice, he was unable to properly defend himself. The language of the negligent homicide statute, MCL 750.324; MSA 28.556, provides:

> Any person who, by the operation of any vehicle upon any highway or upon any other property, public or private, at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years or by a fine of not more than $2,000.00, or by both such fine and imprisonment.

The information filed by the prosecutor was in the statutory short form.[8] Specifically, the information read:

> Did then and there operate a certain motor vehicle, to-wit: 1972 Buick, lic. #84/MI 904/BHX in an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, causing death of Rochelle Richmond, contrary to MCLA 750.324 [MSA 28.556].

On the day of trial, prior to opening arguments, defense counsel requested that the prosecution

---

[6] Docket No. 88613, decided May 11, 1987.

[7] 430 Mich 857 (1988).

[8] MCL 767.44; MSA 28.984 permits an information to be filed in short form.

identify "what actually was the act of negligence, carelessness, was it immoderate speed, what acts are they relying on, what acts do they intend to prove."[9] As the basis for this request, defense cited *People v Maki*, 245 Mich 455, 473; 233 NW 70 (1929), which held:

> Both in this State and elsewhere it is the rule that where a statute uses general or generic terms in describing an offense, does not sufficiently define the crime or set out all its essential elements, or where a charge in the language of the statute charges a mere legal conclusion, an information which alleges the crime in the words of the statute is not sufficient, but a more particular statement of facts is necessary.

The *Maki* Court reasoned that the word "negligence" is too indefinite and did not inform the accused of the nature of the accusation. Specifically, the Court said:

> Negligence is a general word. Its legal definition is about as indefinite as the word itself. It has not such concrete significance in the language that it charges, to general understanding, a definite act or omission. Depending upon circumstances, it requires statement of particular facts to disclose its elements in a given case, and the specific acts of negligence should be stated in an information. Charging an act as having been done negligently, without specifying in what the negligence consisted, is no more enlightening than would be a blanket charge of general fraud or crime. An information in the language of the statute would no more inform an accused of the nature of the accusation than would a charge of false pretenses without stating the pretenses, or fraud without

---

[9] The trial court found the information language to be sufficient and directed the parties to proceed to trial.

stating the representations or means, or crime
without designating the offense. [*Id.* at 473-474.]

The negligent homicide statute expressly elimi-
nates wilfulness and wantonness as elements of
the crime, it sets up no definite standard of con-
duct or test of negligence, and does not even
require that the accused shall have been conscious
that he was negligent. *Maki, supra* at 475. It is for
these reasons that an information for negligent
homicide should set forth the specific acts of al-
leged negligence in order to inform the accused of
the nature of the accusation. *Id.* Because the infor-
mation in the instant case merely charged defen-
dant in the language of the negligent homicide
statute, we find it insufficient.

However, we believe that Judge MAHER's concur-
rence in *People v Covington,* 132 Mich App 79, 88;
346 NW2d 903 (1984), clearly and concisely sets
forth what an information is intended to accom-
plish: "An information must be specific for two
reasons: it affords the defendant due notice of the
charges against him and protection against double
jeopardy should he be retried." Thus, similar to
the concern addressed in *Maki,* the dispositive
question is whether the defendant knew what acts
he was being tried for so he could adequately put
forth a defense. Put another way, was the defen-
dant prejudiced by the information which charged
him with the statutory language of MCL 750.324;
MSA 28.556. We hold that he was not.

Prior to trial, a preliminary examination was
conducted.[10] The purpose of a preliminary exami-
nation is to determine whether a crime has been
committed and, if so, whether there is probable
cause to believe that the defendant committed it.

---

[10] The preliminary examination was given on February 14, 1985,
and the trial was held on August 14, 1985.

*Wayne Co Prosecutor v Recorder's Court Judge,*
101 Mich App 772; 300 NW2d 516 (1980). During a
preliminary examination, the prosecution is not
required to prove that a defendant was guilty
beyond a reasonable doubt. *People v Joyner,* 93
Mich App 554; 287 NW2d 286 (1979). However,
there must be evidence to establish each element
of the offense, or evidence from which those ele-
ments may be inferred. *Wayne Co Prosecutor v
Recorder's Court Judge,* 92 Mich App 119; 284
NW2d 507 (1979). In the instant case, evidence was
presented at the preliminary examination that
alleged the defendant was negligent because he
swerved to the left, rather than to the right, when
he attempted to avoid the fallen sign.

Further, in his response to the defense's pretrial
request for a more specific information, the prose-
cutor stated that he did not believe there would be
any proofs as to immoderate speed. The prosecu-
tion said that it would be "proceeding with evi-
dence only as to operating a vehicle in a careless,
reckless or negligent manner as the information
states."

In sum, before trial began, defendant was aware
that no proofs of immoderate speed would be
offered against him. Further, albeit assisted by the
evidence presented at the preliminary examina-
tion, defendant was informed as to the nature of
the charges,[11] and that under the circumstances,
his act of swerving to the left is what the prosecu-
tion would attempt to prove as negligent. Consid-
eration is also given to the fact that defense coun-
sel neither asked for a bill of particulars nor made
a motion for a continuance. In light of all the

[11] This is consistent with the requirement of art 1, § 20 of the 1963
Michigan Constitution which provides: "In every criminal prosecu-
tion, the accused shall have the right . . . to be informed of the
nature of the accusation . . . ."

above circumstances, we are unable to see how the defendant would have been in any better position with an amended information. Thus, while the information was insufficient, we find no prejudice against defendant. See *People v Ryczek,* 224 Mich 106; 194 NW 609 (1923). (The information charged the statutory short form of manslaughter as well as a second count which amounted to a charge of involuntary manslaughter for which the defendant was convicted. Although the information did not strictly set forth the acts of negligence upon which the conviction was based, it was held that the defendant was not prejudiced in making his defense.)

II

The second issue before this Court is whether defendant was held to the correct standard of care.

There is no question that the applicable standard of care in negligent homicide cases is that of a reasonable person. CJI 16:5:02(1) states: "For negligent homicide the prosecution must prove beyond a reasonable doubt that the defendant was guilty of ordinary negligence." This instruction goes on to explain that "[o]rdinary negligence is defined as want of reasonable care; that is, failing to do what an ordinarily sensible person would have done under the conditions and circumstances then existing . . . ." CJI 16:5:02(4).

This instruction is merely a reiteration of the rule that has been long standing in Michigan. In *People v McMurchy,* 249 Mich 147, 167; 228 NW 723 (1930), this Court said: "Every person driving upon the public highway, or in other places frequented by others, is bound to exercise reasonable care and caution to prevent injury to others." See also *People v Fedderson,* 327 Mich 213, 218; 41

NW2d 527 (1950), and *People v McKee,* 15 Mich
App 382, 385; 166 NW2d 688 (1968).

Defendant asserts that the trial judge held him
to a degree of care greater than that of a reason-
able, or ordinary, person. His argument is prem-
ised on the statement of the trial judge at the
conclusion of the bench trial:

> I'm not saying as I indicated before that there
> was anything gross in the negligence of the defen-
> dant here and from his experience as a truck
> driver it would be even hard to say that he was an
> inexperienced man and that is what adds to the
> situation here. It appears quite obvious to the
> Court that with his experience as a truck driver,
> he could have and he should have been able to
> make a judgment factor at the time of going
> thirty-five miles an hour, having seen the car
> coming from the other direction as he said he did.

Defendant would have us believe that by com-
menting on his experience as a truck driver the
trial judge held him to a standard higher than
that of an ordinary motorist. We disagree.

A thorough reading of the monologue delivered
by the judge when handing down his verdict illus-
trates that the reasonable-person standard was
applied. The judge specifically held:

> I'm impressed that a reading of the standard
> instruction, definition of ordinary negligence is a
> thing that is involved here. Whatever the Court
> must decide has to be done on whether or not in
> its view and its judgment ordinary negligence has
> been made out. . . .
>
> If there was anything to be concerned with, it
> would be whether or not the acts of the defendant
> in this case reached the plateau of ordinary negli-
> gence.
>
> *The standard instruction under degrees of negli-*

*gence and the instructions 16:5:02 states in para-
graph 4,* "Ordinary negligence is defined as want
of reasonable care. That is failing to do what an
ordinary sensible person would have done under
the conditions and circumstances then existing or
doing what an ordinarily sensible person would
not have done under the conditions and circum-
stances then existing in view of probable injury."
[Emphasis added.]

The judge's recitation then continued to CJI
16:5:02(5):

Ordinary negligence occurs in the doing of acts
which are naturally and inherently dangerous to
life, which a reasonable person ought to perceive
are likely to produce injury to another. Ordinary
negligence is greater than or above slight negli-
gence, but less than gross negligence. Ordinary
negligence is characterized by thoughtlessness,
heedlessness and inattention.

After his recitation of CJI 16:5:02(4) and (5), the
judge held:

I invite your attention to this summation so to
speak of what ordinary negligence is. It is charac-
terized by thoughtlessness, heedlessness and inat-
tention. *It seems to the Court that that's the
problem we have here and that is what is made
out here in terms of Mr. Traughber's conduct.*
[Emphasis added.]

The above excerpts clearly illustrate that the
judge did identify the proper standard of care for
determining whether or not the defendant's con-
duct evidenced want of reasonable care given all
the existing circumstances. Accordingly, we find no
error with the standard of care applied by the trial
court. However, we do find error with the court's
failure to apply the standard to the facts sup-

ported by the record. We find error with the court concluding that the defendant created an emergency as opposed to having been confronted with an emergency.

The evidence at trial established that a sudden and unexpected event occurred when the defendant came upon the real estate sign lying in the middle of his lane of traffic. Moreover, it was this unexpected event, coupled with the fact that there was no time to adequately weigh the alternatives, that prompted the defendant to instinctively and impulsively swerve his car to the left in an attempt to avoid the obstacle. On cross-examination, the defendant was asked:

> *Q:* And even traveling at that slow speed [35 mph] you didn't have time to negotiate that space on the right, is that correct?
> *A:* I seen the sign [s]o fast that it was make up your mind what you're going to do. *It was a split second decision. I couldn't negotiate which wa[y] to go or what to do at that amount. I didn't have time.* [Emphasis added.][12]

The defendant testified that the reason he instinctively swerved to the left was because on the right side of the road there was a "three or four foot ditch there with . . . small trees in it . . . ."[13]

---

[12] The fact that this was a "split-second" decision was supported by the testimony of the driver of the other car. On cross-examination, Mr. Parr was asked why he turned left, rather than right, when he saw defendant's car enter his lane:

> *Q:* Was it possible for you to go to the right, off of the road?
> *A:* It's hard to say, *you don't have much time to think.* [Emphasis added.]

[13] This echoed Mr. Parr's testimony that "there were very deep ditches" along the sides of the road. Mr. Parr further testified that if there was enough room on the gravel shoulder of the road to accommodate an automobile (before the ditch would be encountered), it would be a "tight fit."

Notwithstanding this testimony, corroborated by both drivers, the trial judge found that the defendant's "judgment" in reflexively swerving to the left, rather than to the right, was the determinative factor for the guilty verdict:

> It appears quite obvious to the Court that with his experience as a truck driver, *he could have and he should have been able to make a judgment factor at the time of going thirty-five miles an hour,* having seen the car coming from the other direction as he said he did. That instead of going to the left to go around the sign, notwithstanding whatever risk about the ditch or the condition of the berm on the side of the road that he should have slacked his car and he could have gone easily around the sign on the right side of the sign and could have avoided the emergency that he created by trying to swerve to the left and then tried to swerve back to the right.
>
> For the reasons mentioned and discussed and the findings which the Court has made, it is the conclusion of the Court that as to count i of the information the defendant is guilty as charged. [Emphasis added.]

Thus, we disagree with the conclusion that the defendant created the emergency. Not only was the defendant not responsible for the real estate sign having been in the road, but he had no reason to know his lane of travel would be obstructed. He reacted to the sign immediately after his headlights revealed it to be in his way.[14] Therefore, the

---

The defendant testified that the width between the sign and the edge of the ditch was approximately eight feet, which was not enough space through which his car could pass.

[14] Under the "radius of lights" rule, it is negligence as a matter of law to drive a motor vehicle so fast at night that it cannot be stopped in time to avoid a collision with objects within the area lighted by its headlights that is, within the radius of lights. 7A Am Jur 2d, Automobiles and Highway Traffic, § 800, p 1051.

defendant did not "create" an emergency, but rather he reacted to an emergency.

In emergency situations, the driver is not to be held accountable for misjudgment. This Court in *Craddock v Torrence Oil Co,* 322 Mich 510, 517; 34 NW2d 51 (1948), quoted the rule of *Loucks v Fox,* 261 Mich 338, 343; 246 NW 141 (1933):

> In case of an emergency, a driver is not responsible for the selection of the safer method of avoiding a collision. If a reasonably prudent man would turn onto the wrong side of the road under similar circumstances, defendant is free from liability despite the untoward results.

Later, in *Maddux v Donaldson,* 362 Mich 425, 428; 108 NW2d 33 (1961), this Court reiterated:

> But [plaintiff's] actions are not to be judged in the light of hindsight. He was suddenly imperiled by a serious emergency not of his own making. In this situation, as we have so often held, the law makes allowance for lack of calm judgment, for failure "to adopt what subsequently and upon reflection may appear to have been a better method."

See also *Wendover v State,* 63 Misc 2d 368, 376; 313 NYS2d 287 (1970) ("Faced with an emergency, the person called upon to act is not obligated to exercise the best judgment, and an error of judgment, even if unfortunate, does not make it negligent. *Rowlands v Parks,* 2 NY2d 64; 156 NYS2d 834; 138 NE2d 217 [1956]"), and 7A Am Jur 2d, Automobiles and Highway Traffic, § 420, pp 633-634 ("[w]here a motorist, by the negligence of

---

In the present case, it was testified that defendant was traveling at a safe speed, 35 MPH in a 45 MPH zone, and that both headlights on defendant's automobile were functioning properly. Therefore, the "radius of lights" rule has no application here.

another, is placed in a position of danger and is compelled to act suddenly, the law does not demand that accuracy of judgment which would be expected under other circumstances, and in such cases, even though he makes a mistake he will not be deemed to have been guilty of negligence, unless his choice of action is that which no ordinarily prudent person would have taken under similar circumstances").

Here, the defendant, traveling at 35 MPH, first noticed the real estate sign when he was approximately thirty feet from the oncoming car. Therefore, the time within which the defendant had to formulate his judgment was imperceptible.[15] While the defendant's judgment may very well have been incorrect, this Court will not judge the actions of an automobile driver in an emergency situation from a retrospective point of view. *Haney v Beisel,* 287 Mich 239; 283 NW 43 (1938).

### CONCLUSION

We find that the information, coupled with the preliminary examination, resulted in no prejudice toward the defendant and adequately advised him of the conduct for which he was being tried. Furthermore, we find that the trial judge correctly used the reasonable-person standard but failed to apply the standard to the emergency faced by the defendant as evidenced by the record. This being so, the defendant's conduct cannot be said to have been contrary to that of an ordinarily prudent

---

[15] Am Jur 2d, Desk Book, Item No. 105, indicates that an automobile proceeding at 35 MPH travels fifty-one feet per second. This being so, the defendant had less than one second in which to sum up his alternatives and decide how to react to the emergency with which he was confronted. See *Whicher v Phinney,* 124 F2d 929 (CA 1, 1942) (with only a two-second interval in which a driver had to react, there was opportunity only for instinctive action; such action did not provide a basis for a finding of negligence).

person under similar circumstances. Accordingly, we reverse the decision of the Court of Appeals.

LEVIN, CAVANAGH, and ARCHER, JJ., concurred with RILEY, C.J.

BOYLE, J. (*dissenting*). I write separately because I respectfully disagree with the lead opinion's conclusion that the defendant's conviction of negligent homicide[1] must be reversed on the basis that the trial court "failed to apply the reasonable-person standard to the emergency situation which confronted the defendant."[2] *Ante,* p 210.

The trial court identified *and* applied the reasonable-person standard to *all of the circumstances* as they confronted the defendant, including the "sudden and unexpected event [which] occurred when the defendant came upon the real estate sign lying in the middle of his lane of traffic." *Ante,* p 220. Accordingly, the defendant's conviction of negligent homicide should be affirmed.

I

The lead opinion concludes the trial court failed to apply the reasonable-person standard to the

[1] In Michigan, negligent homicide is a misdemeanor punishable by imprisonment of a maximum term of two years, or by a fine of not more than $2,000, or by both such fine and imprisonment. MCL 750.324; MSA 28.556.

[2] This Court granted leave to appeal to address whether the information for negligent homicide was sufficient to allow the defendant to adequately present a defense against specific acts of negligence, and whether the defendant's conduct was held to the correct standard of care. *People v Traughber,* 430 Mich 857 (1988).

The lead opinion does not clarify whether the basis for reversal is that the trial court erred as a matter of law, or that the evidence was insufficient to support that court's ultimate decision that the defendant was guilty of negligent homicide.

See *People v Petrella,* 424 Mich 221; 380 NW2d 11 (1985), in which this Court adopted the sufficient-evidence standard applicable to criminal jury trials for criminal bench trials.

emergency situation that confronted the defendant. The opinion holds that the defendant simply reacted to an emergency, rather than created the emergency,[3] and that, therefore, the "defendant's conduct cannot be said to have been contrary to that of an ordinarily prudent person under similar circumstances." *Ante,* pp 223-224.

Significantly, the opinion makes no reference to the standard of review that it presumably is applying to the trial court's finding. In my view, however, the Court has simply substituted its own view of the evidence in preference for a different outcome of this trial. Where a jury is waived, the trial judge as a factfinder weighs the evidence and determines the credibility of the witnesses.[4] An appellate court may not reverse the finding of guilt by a trial judge so long as any reasonable judge could have so found.[5]

In *People v Petrella,* 424 Mich 221; 380 NW2d 11 (1985), the Court determined that the standard for reviewing the sufficiency of the evidence in criminal jury trials is also applicable to criminal bench trials. Speaking for six members of the Court, Justice RYAN stated:

> [W]e think it clear that the *Jackson* [*v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979);] [*People v*] *Hampton* [407 Mich 354; 285 NW2d 284 (1979)] standard of whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt should also be applied to bench trials. [*Id.,* pp 269-270.]

Thus, the reviewing Court must view the evidence

---

[3] The lead opinion substitutes its conclusion for that of the trial court that the defendant "created an emergency as opposed to having been confronted with an emergency." *Ante,* p 220.

[4] 2 Wright, Federal Practice & Procedure: Criminal, § 374, p 315.

[5] See *People v Petrella,* n 2 *supra.*

in a light most favorable to the prosecution.[6] *Id.,* p 268.

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." (Citation omitted.) Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [*Jackson v Virginia, supra,* pp 318-319. Emphasis in the original.]

The lead opinion's departure from the *Jackson-Hampton* standard of review is illustrated by the following characterization of the evidence:

> The evidence at trial established that a sudden and unexpected event occurred when the defendant came upon the real estate sign lying in the middle of his lane of traffic. Moreover, *it was this unexpected event, coupled with the fact that there was no time to adequately weigh the alternatives,* that prompted the defendant to instinctively and impulsively swerve his car to the left in an attempt to avoid the obstacle. [*Ante,* p 220. Emphasis added.]

In fact, the trial court found that the defendant was inattentive prior to observing the sign and that had he been attentive he could have slackened his speed. The court further found that in choosing to swerve into the lane of an oncoming car, the defendant did not act as a reasonable and prudent person under the circumstances.

After reviewing the record, we find that a rational trier of fact could have found the elements

---

[6] See *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), cert den 449 US 885 (1980).

of negligent homicide beyond a reasonable doubt.[7]
Viewed in the light most favorable to the prosecu-
tion, the evidence was sufficient to justify the trial
court's determination that the defendant was
guilty of negligent homicide. Thus, the conclusion
of the lead opinion can be explained only in one of
two ways—disagreement with the Legislature's
determination to criminalize negligent homicide or
rejection of *People v Petrella.*

II

Whether the defendant "created an emergency
as opposed to having been confronted with an
emergency" and whether the defendant's conduct
was contrary to "that of an ordinarily prudent
person under similar circumstances" are questions
of fact, as to which, the lead opinion simply has
substituted its own characterization of the evi-
dence for that of the trial court.

Referring to the trial judge's findings of fact, the
lead opinion states:

> The above excerpts clearly illustrate that the
> judge did identify the proper standard of care for
> determining whether or not the defendant's con-
> duct evidenced want of reasonable care given all
> the existing circumstances. Accordingly, we find no
> error with the standard of care applied by the trial
> court. However, we do find error with the court's
> failure to apply the standard to the facts sup-
> ported by the record. We find error with the court
> concluding that the defendant created an emer-

---

[7] The trial judge made specific findings on all the evidence intro-
duced at trial, including the fact that the defendant swerved into the
other lane to avoid hitting a real estate sign lying on its side in the
defendant's lane. The judge concluded that the defendant had failed
to act as a "reasonable, prudent person under all the circumstances";
thus, the defendant's conduct amounted to ordinary negligence and
convicted the defendant of negligent homicide.

gency as opposed to having been confronted with
an emergency. [*Ante*, pp 219–220.]

As this excerpt demonstrates, the trial judge is
faulted, not for an error of law, but for his factual
findings. The trial court's finding of fact that the
defendant created an emergency can be found to
be error only if no rational judge could have so
concluded.[8]

Thus, since, as the lead opinion itself recognizes,
the judge did not commit legal error in the stan-
dard employed, the sole issue before us is whether
a rational judge could have found beyond a reason-
able doubt that a reasonable person in the defen-
dant's position would have failed to observe the
sign in time to stop and, having failed to do so,
would move into the lane of an oncoming car,
thirty feet away.

In a negligence suit the trier of fact must take
into consideration any "sudden or unexpected
event or combination of circumstances" which con-
fronted a person in evaluating whether the con-
duct was that of a reasonable person under all the
circumstances. Prosser & Keeton, Torts (5th ed),
§ 33, pp 196-197.

It is evident from the trial judge's decision that
he took into consideration all of the events and
circumstances which confronted the defendant and
concluded that the defendant was acting unreason-
ably both prior to seeing the sign and after he saw
it.

---

[8] The lead opinion cites cases holding that a person should not be
judged guilty of negligence merely because, in retrospect, the person
is deemed not to have used the best judgment under the circum-
stances. However, those are situations in which under former law
persons accused of contributory negligence in civil suits contested the
allegations on the basis that their negligence was a reasonable
reaction to the emergency created by the other party. See *Maddux v
Donaldson*, 362 Mich 425, 428; 108 NW2d 33 (1961); *Craddock v
Torrence Oil Co*, 322 Mich 510, 517; 34 NW2d 51 (1948); *Loucks v Fox*,
261 Mich 338, 343; 246 NW 141 (1933).

Ordinary negligence is greater than or above slight negligence, but less than gross negligence. Ordinary negligence is characterized by thoughtlessness, heedlessness and inattention. I invite your attention to this summation so to speak of what ordinary negligence is. It is characterized by thoughtlessness, heedlessness, and inattention. It seems to the Court that that's the problem we have here and that is what is made out here in terms of Mr. Traughber's conduct.

I want to note here particularly the testimony on cross examination. This is what Mr. Traughber said. Sure he wasn't slurring words, he was aware and assured he was only going thirty-five miles per hour. Both lights on the other car were going. He saw the other car even before he saw the sign. He made a judgment to avoid the sign anyway. He saw the lights on the other car but he doesn't recall the fog lights nor how bright the regular lights on that car were. That is the conclusive piece of evidence which the Court has that trips this entire matter into the category [of] ordinary negligence at least.

It was thoughtlessness, heedlessness, inattention. It is conclusive and very clear from the testimony of all the witnesses here that in the moments that Mr. Traughber with his friend went into that car and even before they went into that car, they were having a disturbing time. There was something that was distracting Mr. Traughber. He was concerned with the discussion that he was having with Irene. He was frustrated by the decisions apparently that Irene reached in terms of the things that he was discussing. He was not concentrating and that is quite evident from the fact that they drove around—driving around in a car and it could easily be said that he was apparently upset by the results and he was not it seems like in a proper frame of mind to be driving a car and finally the pinnacle circumstances that went on with the driving that night. No one was speeding. It can't be said that anyone was recklessly in the sense of speeding. But in the totality of Mr.

Traughber's conduct, he demonstrated that thoughtlessness and that heedlessness and that inattention to his responsibility as the driver of the car so as to be guilty of ordinary negligence and that is what the Court must conclude in this matter and that is what is apparent from the total consideration of all the evidence in the case here.

I'm not saying as I indicated before that there was anything gross in the negligence of the defendant here and from his experience as a truck driver it would be even hard to say that he was an inexperienced man and that is what adds to the situation here. It appears quite obvious to the Court that with his experience as a truck driver, he could have and he should have been able to make a judgment factor at the time of going thirty-five miles an hour, having seen the car coming from the other direction as he said he did. That instead of going to the left to go around the sign, notwithstanding whatever risk about the ditch or the condition of the berm on the side of the road that he should have slacked his car and he could have gone easily around the sign on the right side of the sign and could have avoided the emergency that he created by trying to swerve to the left and then tried to swerve back to the right.

For reasons mentioned and discussed and the findings which the Court has made, it is the conclusion of the Court that as to count I of the information, the defendant is guilty as charged.

The sign lying in the road, as defense counsel himself recognized,[9] was simply one of the circum-

[9] As defense counsel noted in his argument:

What this case boils down to me is what a driver does, what an average driver does when he's driving down the road thirty-five miles an hour. It's a paved road. He's [it's] got some cracks in it, some patches. We've got a narrow berm on his side with trees in a ditch and he sees a six foot sign and he has to decide immediately what to do.

Mr. Traughber testified that he just couldn't go to the right and whether he should have gone over to the side and gone to

stances contemplated by the normal standard of care in seeking to ascertain whether the defendant acted as an ordinarily prudent and careful person would act under the same circumstances.[10] Prosser & Keeton, *supra,* p 196.

It is clear from reading the trial court's summation of the evidence that the "emergency" was not the sign which might have been avoided, had the defendant not been inattentive, bý "slackening his speed" or going to the right, but the defendant's swerving to the left. Viewed in a light most favorable to the plaintiff, the trial judge cannot be said to have acted irrationally in finding that the defendant's conduct in swerving into the opposite lane to avoid hitting a sign only one and one-half inches thick in the face of an oncoming car, only thirty feet away, was unreasonable.

### III

We would find that the evidence presented was sufficient to justify the decision of the trial judge. The evidence showed that the defendant was traveling thirty-five miles per hour, that there was an area eleven feet wide between the sign and the edge of the ditch on the right side of the sign, and that the defendant testified that he saw the oncoming car in the opposite lane approximately only thirty feet away.[11]

the left and thought he could get back into his own lane is probably the question that the Court has got to determine.

[10] The "emergency" doctrine also cannot serve to excuse an actor when the emergency was created through the actor's own negligence. In addition, there are some "emergencies" which a person must anticipate. In present day traffic conditions, "any driver of an automobile must be prepared for the sudden appearance of obstacles and persons in the highway . . . ." Prosser & Keeton, Torts (5th ed), § 33, p 197.

[11] It is important to note that thirty feet is approximately three car

As soon as the driver of the other car saw the defendant swerve into the northbound lane he tried to move into the defendant's southbound lane to avoid hitting the defendant's car. The other driver testified that he "got maybe a foot and a half to maybe two feet of my car over the center line before he hit me head on." When asked to define "head on," the driver stated that the defendant's car "caught about three quarters of the front end of my car from right to the left" and that the defendant's car was "all of it across the center line," in his (the other driver's) lane, that is, the northbound lane.

The defendant himself testified that he was only three feet into his own lane at the time of impact. Although the defendant's testimony differed from that of the other driver, even if the defendant was three feet into his own lane, the cars were still in the northbound lane. Thus, while the point of impact, where the defendant's left front end collided with the other driver's right front side, where the decedent sat, might have occurred just inside the defendant's lane, the cars still were in the northbound lane and *not* in the defendant's lane.

The lead opinion asserts that the "two cars collided head-on just inside the defendant's lane," thus implying that the defendant had time to swerve into the other lane to avoid the sign, and indeed had returned to his own lane when the collision occurred. This description also implies that if only the other driver had stayed in his own lane, there would have not been an accident because the defendant could have made it back

lengths and that a car traveling one mile per hour covers 1.5 feet per second. In this case, the defendant, traveling thirty-five miles per hour, would travel fifty-two and one-half feet per second, and the oncoming car would be traveling toward the defendant at approximately the same rate.

safely to his own lane. This is de novo review unsupported by the record. Even if the other driver had remained in the northbound lane, the defendant could not, and did not, have enough clear highway ahead to swerve into the other lane and back into his own lane since by his own testimony he only had thirty feet of space in which to do this.

The defendant, traveling at a moderate speed, did not see a sign lying in the road until he was on top of it.[12] When the defendant did see the sign, he chose to swerve to the left, although there was space to the right of the sign, into the lane of an oncoming car, only thirty feet away, to avoid hitting the sign which, lying on its side, was approximately one and one-half inches thick. As a result, the defendant collided with the other car because there simply was not enough time for the defendant to return to his own lane and avoid the collision. There was "sufficient evidence" to support the defendant's conviction of negligent homicide.[13]

### CONCLUSION

The trial court held the defendant's conduct to the correct standard of care and considered all of the circumstances which confronted the defendant in evaluating his conduct. Reviewing the entire evidence, under the appropriate standard, there is

---

[12] The fact that there are no street lights on Denton Road does not mean that, with his headlights on, the defendant could not have seen the sign until he was suddenly on top of it. The defendant had been drinking, was arguing with the passenger, Irene Baker, in the car, and thus did not see the sign until he came directly upon it. Then, rather than stop or swerve to the right of the sign, he swerved into the path of an oncoming car.

[13] In this case, the trier of fact had to have found the defendant guilty of every element of the crime of negligent homicide beyond a reasonable doubt. MCL 750.324; MSA 28.556.

no basis for this Court to reverse the decision of the lower court. This Court cannot, and should not, substitute its judgment for that of a trial judge on questions of fact.

Accordingly, we would affirm the decision of the Court of Appeals affirming the defendant's conviction of negligent homicide.

BRICKLEY and GRIFFIN, JJ. concurred with BOYLE, J.