*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON HOWARD MAUK,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2024

No. 362411
Iosco Circuit Court
LC No. 21-002854-FC

Before: GADOLA, C.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

A jury found defendant guilty of 13 counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration with a person under 13 years of age and defendant 17 years of age or older). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve concurrent terms of 39 to 80 years in prison. Defendant appeals as of right, raising challenges to his convictions and sentences both through appellate counsel and through a Standard 4 brief.[1] For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.

## I. BACKGROUND

This appeal arises from defendant's convictions for numerous acts of sexual abuse perpetrated by defendant against his minor daughter, MH, over a period of between two to three years. At the time frame in question, defendant had sole custody of MH. The abuse typically involved defendant penetrating MH's vagina with either his tongue or a vibrator, or both. Although the victim's testimony varied, MH estimated that defendant used the vibrator three to five times altogether but had used his tongue more than 10 times and up to three times per week. The abuse began when MH was between 8 and 9 years old and continued until she was 11, which

---

[1] Under Administrative Order No. 2004-6, "[a] Standard 4 brief refers to a brief filed by the defendant *in propria persona* in which he or she raises issues on appeal against the advice of counsel." *People v Ryan*, 295 Mich App 388, 392 n 1, 819 NW2d 55 (2012).

was when she revealed the abuse to her grandparents. MH described how the abuse began on defendant's sailboat when MH asked defendant not to have a girlfriend. Defendant told MH that, if he did not have a girlfriend, MH needed to "help" him, and the first abuse followed. MH described other instances of abuse on the sailboat as well as similar instances of abuse that occurred in their house. The last instance of abuse occurred on June 23, 2021, which was immediately prior to a visit by MH's grandparents on June 25, 2021. MH described how defendant made her wear lingerie on this occasion.

During a grandparents' visit on June 25, the victim's grandmother, and defendant's mother, Andrea Jean Timm, found the vibrator in a sock while doing laundry. After dinner and during a walk, MH told her grandparents that defendant found out that Timm had discovered the vibrator and had yelled at MH. According to MH, defendant believed that MH purposefully left the vibrator out for Timm to find. MH revealed to her grandparents the abuse that had been occurring, and the grandparents took MH to the police. MH met with Trooper Allen Good and informed him about the allegations. In the early morning hours of June 26, a "SANE examination" was performed on MH.[2] The SANE examiner discovered redness and abrasions in MH's vaginal area, which the examiner described as being abnormal and consistent with MH's abuse allegations.

Trooper Good subsequently interviewed defendant. As the interview progressed, Trooper Good became more persuaded that MH's allegations were credible. Consequently, a forensic interview for MH occurred in which she described the allegations.[3] Jenny Vittitow, an expert in forensic interviews, opined that the necessary protocols and procedures were followed in MH's interview and that there was no improper coaching. At defense counsel's request, this interview was played for the jury.

An arrest warrant was issued for defendant, but he fled in his boat and evaded capture for many days. Police eventually located him in the wilderness with various survival and camping supplies. Police searched defendant's house and found the vibrator and lingerie. Defendant acknowledged purchasing both items on April 5, 2021, but he claimed they were for his girlfriend. Defendant denied MH's allegations. An expert in DNA testified that, after testing, there was a high probability that MH's DNA was present on the vibrator. Additionally, defendant had previously pleaded guilty to a separate instance of CSC-I involving a minor. At the trial in the present case, the prior victim, MI, testified about the abuse. MI described how, on three separate occasions, defendant had touched MI's vagina. Two of these instances were through MI's clothes, but the third instance was "skin to skin."

The prosecution originally charged defendant with 20 counts of CSC-I: 10 counts involved penetration by the vibrator, and 10 counts involved penetration by his tongue. Apart from the distinction in penetration methods, the counts were identical. At the start of the trial's third day,

---

[2] A SANE examination occurs when an individual who alleges sexual assault or abuse is forensically examined. The SANE examiner listens to the allegations, performs a medical exam of the individual, and records any possible physical evidence of sexual assault or abuse.

[3] A forensic interview is one that follows specific protocols and procedures to more accurately elicit an alleged child victim's allegations.

the trial court granted the prosecution's motion to dismiss counts 6 through 10, which were 5 counts involving penetration by the vibrator. Therefore, the amended information listed 15 total counts of CSC-I, 10 of which involved penetration by defendant's tongue and 5 of which involved penetration by the vibrator. The trial court instructed the jury not to consider the dismissed counts and to only consider the remaining 15 counts. The trial court gave the jury a general unanimity instruction regarding the verdict. The jury found defendant guilty of counts 1 through 3 and counts 6 through 15 but not guilty of counts 4 and 5.

Before sentencing, defendant filed various motions *in propria persona* challenging his convictions. Among other arguments, defendant contended that the information had provided insufficient notice of the charges against him because of the virtually identical counts. At the sentencing hearing, which also addressed defendant's various motions, the trial court disagreed and denied the motions associated with this argument. Defendant also moved for an evidentiary hearing, arguing that defense counsel was ineffective for failing to provide evidence that defendant had caught MH with the vibrator in her bedroom. Defendant asserted that, despite he and defense counsel agreeing to provide the jury with this evidence and pursue it as part of their defense, defense counsel chose at the last minute not to do so. However, at the sentencing hearing, defendant refused to argue this motion during oral arguments. The trial court determined that defendant's actions were tantamount to a withdrawal of the motion.

The trial court sentenced defendant to serve 39 to 80 years. After the filing of the present appeal, defendant through appellate counsel moved the trial court for a new trial, raising identical issues to many of those now raised on appeal. Defendant argued that defense counsel was ineffective for failing to object to inadmissible hearsay and purposefully eliciting, or putting into evidence, inadmissible hearsay. This included testimony from Timm, Trooper Good, and the SANE examiner, as well as defense counsel's decision to play the forensic interview for the jury. Defendant further argued that defense counsel was ineffective for mishandling the DNA evidence and pursuing illogical and offensive strategies, which culminated in his closing remarks.

The trial court convened a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), and defense counsel testified concerning his strategy and reasoning for the various challenged pieces of testimony, the forensic interview, and the DNA evidence. Defense counsel explained that his strategy for Timm had been that she influenced or even coached MH to make the allegations. For Trooper Good, defense counsel's strategy had been one of bias and a presumption of guilt that prevented Trooper Good from adequately investigating other leads. Defense counsel also had believed Trooper Good failed to follow proper procedure during his initial interview with MH. Defense counsel explained that the decision to play the forensic interview was made by both himself and defendant in order to impeach MH's trial testimony by showing the various inconsistencies between what was said in the interview versus what was testified to at trial. Finally, regarding the DNA evidence, defense counsel explained that he had investigated transfer DNA as a possible defense but ultimately determined it was not viable.

The trial court denied defendant's motion, finding that defense counsel's actions had been reasonable and that, if there had been any errors, none affected the trial's outcome. Defendant now appeals, raising the same ineffective assistance of counsel arguments as in the trial court. Furthermore, defendant challenges the adequacy of the information as well as the scoring of OV

3 and OV 11. In his Standard 4 brief, defendant also challenges the jury instructions and his defense counsel's decision not to challenge these instructions.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective in four ways: first, for failing to object to, or purposefully eliciting, inadmissible hearsay from Timm, Trooper Good, and the SANE examiner, and for playing the forensic interview; second, for eliciting from Trooper Good an improper opinion of defendant's guilt and MH's credibility; third, for mishandling the DNA evidence; and, finally, for amplifying these errors in closing remarks. We disagree and address each in turn.

The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Findings of fact are reviewed for clear error while questions of constitutional law are reviewed de novo. *Id*. "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). Additionally, we review "a claim of cumulative error to determine whether the combination of alleged errors denied the defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks omitted), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and a defendant has a "heavy burden" to show otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (quotation marks and citation omitted). For an ineffective assistance of counsel claim to be successful, a defendant must show: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

Examination of counsel's actions must be "highly deferential" and without the benefit of hindsight, *Strickland*, 466 US at 689, and there is a "strong presumption" that counsel's actions arose from "sound trial strategy," *Trakhtenberg*, 493 Mich at 52. We must "not substitute our judgment for that of counsel on matters of trial strategy . . . ." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. As our Supreme Court explained, "a court must determine whether the 'strategic choices [were] made after less than complete investigation,' and any choice is 'reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *Id*. (citation omitted). Counsel is required to examine the record, research the law, and to use his professional judgment to determine the strongest issues and arguments to raise. See *Jones v Barnes*, 463 US 745, 751-752;

103 S Ct 3308; 77 L Ed 2d 987 (1983). Counsel has no duty to make a meritless or futile objection. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

## 1. HEARSAY

Hearsay is inadmissible unless an exception applies. MRE 802.[4] Under the prior version of MRE 801(c), hearsay was defined to be "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Under the prior version of MRE 803(4), a listed exception to the hearsay rule was

> [s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

We have applied MRE 803(4) to statements made by child victims of sexual abuse to medical providers. See *People v Johnson*, 315 Mich App 163, 193-194; 889 NW2d 513 (2016).

As an initial matter, defendant has abandoned any challenge to the SANE examiner's testimony regarding what MH said during the SANE examination. Although defendant initially, in the trial court, challenged the SANE examiner's testimony, he subsequently withdrew this challenge because he and appellate counsel agreed that this testimony was permitted under existing law. On appeal, appellate counsel similarly concedes that statements made to a SANE examiner fall within MRE 803(4). We will not address this argument further.

Defendant challenges two pieces of testimony from Timm about what her oldest son and defendant's boss said to her:

> My. . . oldest son, had called me and told me that he was cutting all toxic people from his life. He was going to turn his life around and he was starting with his dad and his brother [i.e., defendant]… and he said, Mom, you may or maybe you don't know, *but [defendant] is still drinking a lot and he has been drinking since the day he got out of jail*.

> * * *

> [I]t had been confirmed by [defendant's] boss, Jim, who called me Monday morning and told me *that there was a lot of boaters who were complaining about [defendant] being drunk on the beach and a young girl being inappropriately dressed* and wanting to go home and begging to go home and that he knew he loved

---

[4] Many of Michigan's Rules of Evidence were amended by Administrative Order No. 2021-10, ___ Mich ___ (2023), and made effective January 1, 2024. For purposes of this opinion, we utilize the prior versions of each rule.

my son and that if we could just nip this in the bud, . . . we could stop it before it started. [Emphasis added.]

Defendant argues that this was inadmissible hearsay that cast him in a poor light as a drunkard and should have been objected to by defense counsel. Defense counsel conceded that the testimony was inadmissible hearsay but was reluctant to post too many objections early in the trial. However, we agree with the trial court that even assuming failure to object constituted ineffective assistance of counsel, the record still contains unchallenged evidence of defendant's drinking. MH testified that she told Timm about defendant's alcohol usage, including that defendant "would drink a lot, like excessively, every night." Therefore, any effect this challenged testimony had on the outcome of the trial was minimal because it was cumulative of other unchallenged testimony.

Next, defendant challenges defense counsel's cross-examination of Timm. Defense counsel asked Timm, "During that interview [with Trooper Good] when they were questioning, weren't there times that you actually interjected and talked with [MH] during the question and answering?" Timm replied, "I honestly don't remember. I—*my take away from that was that he made her dress in lingerie and used a vibrator on her. That is the only thing that I remember from that interview and I was horrified.*" (Emphasis added.) Defendant argues that defense counsel was ineffective for eliciting this testimony because it exposed the jury to hearsay from MH about her allegations. However, defense counsel clearly did not purposefully elicit this response. Defense counsel did not ask Timm what MH said during the interview, and it was Timm who decided to provide an unresponsive answer. "A voluntary and unresponsive statement does not ordinarily constitute error." *People v Kelsey*, 303 Mich 715, 717; 7 NW2d 120 (1942).

Regardless, these allegations were made known to the jury through other admissible means, including MH's own testimony, and "the admission of a hearsay statement that is cumulative to in-court testimony by the declarant can be harmless error, particularly when corroborated by other evidence." *People v Gursky*, 486 Mich 596, 620; 786 NW2d 579 (2010). Moreover, to the extent defendant argues that the hearsay acted as corroboration, "Michigan law provides that where a hearsay statement is not offered and argued as substantive proof of guilt, but rather offered merely to corroborate the child's testimony, it is more likely that the error will be harmless." *Id*. Again, we agree with the trial court that such testimony was harmless.

Next, defendant challenges the decision to play the forensic interview for the jury. At the *Ginther* hearing, defense counsel explained that, at that point of the trial, he had been concerned with inconsistencies between what MH had said prior to trial versus her trial testimony. He wanted to use the interview to impeach MH's trial testimony, and his thorough cross-examination of MH attempted to highlight the perceived inconsistencies. Moreover, this was a *joint* decision. Defense counsel testified that he and defendant discussed and agreed to this strategy, and defendant never disputed this. Defendant had even sent a text message to defense counsel after trial *complaining* that the interview was never admitted into evidence. Defendant may not now challenge a decision he himself agreed to and desired. Furthermore, as to matters of trial strategy it is well-settled law that an "appellate court gives defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Accordingly, we do not substitute our judgment for that of defense counsel, or review such decisions of strategy with hindsight. *Id*.

-6-

Next, defendant challenges Trooper Good's testimony about what MH told him during her interview with him. The prosecution asked Trooper Good, "So, can you kind of give me the boundaries of that meeting with her, . . . I mean, how did the discussion start?" Trooper Good replied that, when he spoke with MH, "[s]he started discussing her father's alcohol use and abuse and then *she began talking to me about outfits, specifically lingerie that he would have her wear and then the last statement of discussion was regarding the physical sexual assault of her* by [defendant]." (Emphasis added.) Defense counsel did not object, and defendant argues that defense counsel was ineffective for failing to do so because this yet again exposed the jury to the allegations and acted as corroboration. The trial court determined this was not hearsay because it was not offered to prove the truth of the matter asserted, and we agree. The prosecution did not try to elicit testimony about the *content* of what MH had told Trooper Good. Rather, this was merely an attempt to set up the day's timeline and how the investigation unfolded. It was Trooper Good who gave an unresponsive answer about the allegations themselves. Regardless, as previously discussed, the allegations were made known to the jury through other admissible means, making any error harmless. See *Gursky*, 486 Mich at 620.

## 2. OPINION OF GUILT

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *Dobek*, 274 Mich App at 71. Similarly, an expert may not opine vouch for the truthfulness of a victim of criminal sexual conduct. *Id*.

Defense counsel asked Trooper Good, "*Did you ever, during that interview, tell [defendant] that he was, in fact, guilty? That you believed he was guilty of this*?" Trooper Good replied, "*I believe the phrase that I used was that I believed [MH's] disclosure to me to be credible*." Defense counsel reiterated, "*You believed that what [MH] stated was credible*," and Trooper Good replied, "*To me, yes*." (Emphasis added.) Defendant contends that this was an improper opinion of defendant's guilt and MH's credibility and that there could be no strategic reason to elicit such damaging testimony. At the *Ginther* hearing, defense counsel explained that he had believed Trooper Good was biased against defendant from the beginning and failed to properly investigate other leads. When viewed in the proper context, the challenged testimony reflects a strategy of exposing bias. Defense counsel rigorously cross-examined Trooper Good about his investigation and treatment of defendant. In closing remarks, defense counsel argued that Trooper Good's bias prevented any follow-up into other witnesses or innocent explanations for the allegations. Therefore, defense counsel clearly made it part of his strategy to try to show that Trooper Good's opinion regarding defendant's guilt so early on in the investigation demonstrated bias and tainted the investigation. Again, we do not examine or review such decisions of strategy with hindsight. *Heft*, 299 Mich App at 83.

## 3. DNA EVIDENCE

Defendant argues that defense counsel was ineffective for failing to pursue transfer DNA evidence as an explanation for how MH's DNA was found on the vibrator; instead, according to defendant, defense counsel put forward a highly offensive argument about how MH may have used the vibrator on herself. However, defendant ignores his own post-conviction motion in which he explicitly argued that he had *wanted* to put forward evidence that he had caught MH with the

vibrator in her bedroom. He argued that he and defense counsel had discussed this strategy in depth months before trial, that they had decided to put forward the evidence, but that defense counsel had decided to deviate from this at the last minute right before defendant testified at the trial. Defendant was the one who had pushed for the very strategy that he now challenges on appeal. Defense counsel cannot be ineffective for pursuing part of a strategy that defendant insisted his counsel pursue.

## 4. CLOSING REMARKS

Our Supreme Court previously discussed the importance of closing remarks:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. [*People v Clark*, 453 Mich 572, 584; 556 NW2d 820 (1996) (citation omitted).]

As a result, a defendant may claim ineffective assistance of counsel as it relates to closing remarks. See *Bell v Cone*, 535 US 685, 701-702; 122 S Ct 1843; 152 L Ed 2d 914 (2002).

Defendant's arguments regarding defense counsel's closing remarks largely rely on defense counsel having been ineffective in the previously discussed instances. Defendant maintains that the closing remarks only served to amplify the previously discussed errors. However, for those reasons already discussed, we disagree that defense counsel was ineffective in these prior instances. Therefore, there could be no amplification during closing remarks. We also disagree with defendant's characterization of the remarks as being incoherent or lacking. Our review shows that defense counsel focused on several key parts of his strategy. He focused on Timm having possibly influenced or coached MH; he focused on Trooper Good's perceived bias toward defendant and the effect this had on the investigation; and he also theorized how the vibrator could have had MH's DNA without the sexual abuse having occurred. Additionally, defense counsel focused on the perceived inconsistencies in MH's testimony, and he pointed to and discussed many specific instances of these. Contrary to defendant's assertions on appeal, defense counsel did not simply announce that there were inconsistencies and leave it to the jury to discover the inconsistencies. Given that the jury acquitted defendant of two counts, defense counsel's efforts were effective.

## 5. CONCLUSION

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106. Based on the circumstances, actions at trial, and explanations at the *Ginther* hearing, we are not persuaded that defense counsel's actions fell below an objective standard of reasonableness in any of the instances. Accordingly, without any errors,

there can be no basis for a new trial. See *Dobek*, 274 Mich App at 106 ("Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal.").

## B. INFORMATION

Defendant argues that the information provided inadequate notice of the charges against him.[5]

We review de novo constitutional issues, such as whether an information provided a defendant adequate notice of the charges. See *People v Darden*, 230 Mich App 597, 600; 585 NW2d 27 (1998). "The Due Process Clause of the Fourteenth Amendment mandates that a state's method for charging a crime give a defendant fair notice of the charge against the defendant, to permit the defendant to adequately prepare a defense." *People v Bailey*, 310 Mich App 703, 716; 873 NW2d 855 (2015) (quotation marks and citation omitted). "An information must be specific for two reasons: it affords the defendant due notice of the charges against him and protection against double jeopardy should he be retried." *People v Traughber*, 432 Mich 208, 215; 439 NW2d 231 (1989) (quotation marks and citation omitted). An information must contain:

> (a) The nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged.
>
> (b) The time of the offense as near as may be. No variance as to time shall be fatal unless time is of the essence of the offense. [MCL 767.45(1)(a)-(b).]

For criminal sexual conduct cases involving children, "an imprecise time allegation would be acceptable . . . given their difficulty in recalling precise dates," *Bailey*, 310 Mich App at 717 (quotation marks and citations omitted), and defendant has not challenged that the charges were deficient due to an imprecise time allegation. Instead, defendant argues that the charges lacked specificity because they were virtually identical to each other.

In *Bailey*, 310 Mich App at 717-718, we held that the information adequately provided the defendant with notice of the charges. The defendant was charged with four counts of CSC-I involving "digital-vaginal sexual penetration of three minors: MB, AB, and BS." *Id.* at 709. More specifically, Counts I and II related to MB, Count III related to AB, and Count IV related to BS. *Id.* at 710-711. Although the defendant argued "that the information did not sufficiently state the nature of the offenses because each count contained nearly identical language accusing him of committing sexual misconduct sometime over the course of eight years," we reasoned that the "defendant fails to explain why the similarity of the allegations in each count gives rise to a violation of MCL 767.45(1)(a)." *Bailey*, 310 Mich App at 718. We determined that the

---

[5] Defendant focuses primarily on the information. Although he briefly attempts to challenge the jury instructions, he fails to provide any substantive argument regarding how they were insufficient. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). We deem this argument abandoned.

information provided adequate notice of the charges "[b]ecause the information alleged that defendant penetrated each victim's vagina with his fingers and provided a citation of each law that defendant violated . . . ." *Id*.

The present case is analogous to *Bailey*. Defendant was charged with 20 counts of CSC-I regarding MH. Ten of these counts related to the use of a vibrator, and 10 of these counts related to the use of his tongue. Each count provided a citation of each law that defendant allegedly violated as well as a description of the law. Furthermore, each count provided whether defendant allegedly penetrated MH with a vibrator or his tongue. Although many counts were otherwise identical, this was due to the nature of the charges against defendant and the time frame in which the charges allegedly occurred. Additionally, defendant fails to explain *why* the similarity of the counts gives rise to a violation of MCL 767.45(1)(a). Moreover, even if the information was insufficient, defendant has failed to show any prejudice regarding his defense. Defendant essentially relies on an insufficient information and requests a new trial, but he fails to show what *effect* this had on his defense.[6] See *Traughber*, 432 Mich at 217 ("Thus, while the information was insufficient, we find no prejudice against defendant.").

Defendant argues that, even if the information was adequate, there was a risk of double jeopardy. "The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). Defendant's position is premature because he has not yet been subject to a second prosecution arising out of the same time frame. Moreover, we note that defendant is essentially relying on the "same transaction test" that has already been rejected by our Supreme Court.[7] See *id*. at 578 & n 14.

C. OFFENSE VARIABLES

Defendant argues that the trial court erred by assessing 5 points for OV 3 and 25 points for OV 11.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2016) (quotation marks and citation omitted). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted). A "[p]reponderance of the evidence means

---

[6] Defendant's position relies almost entirely on a Sixth Circuit case, *Valentine v Konteh*, 395 F3d 626, 632-633 (CA 6, 2005), but, "[a]lthough lower federal court decisions may be persuasive, they are not binding on state courts," *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004). Furthermore, we are not persuaded that *Valentine* is applicable here.

[7] Similar to his position concerning the adequacy of the information, defendant's double jeopardy position relies on yet another nonbinding Sixth Circuit case, *Isaac v Grider*, 211 F3d 1269 (CA 6, 2000), and again, we are not persuaded that it is applicable here.

such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008) (quotation marks and citation omitted). Additionally, "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Lampe*, 327 Mich App at 111 (quotation marks and citation omitted).

"Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). A defendant is entitled to resentencing when a trial court commits an error in scoring the sentencing guidelines and when this error "altered the appropriate guidelines range." *People v Francisco*, 474 Mich 82, 88-91; 711 NW2d 44 (2006).

OV 3 provides that five points are assessed when "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(e). The SANE examiner testified that, when she examined MH, the vaginal area had abnormal redness and abrasions that were consistent with MH's descriptions of abuse. There was no indication that MH received medical treatment for the redness and abrasions. Therefore, there was evidence that MH had a bodily injury that did not require medical treatment. Furthermore, contrary to defendant's assertions on appeal, the examiner's testimony was not mere speculation. The examiner was an expert on SANE exams, and she described in detail why the redness and abrasions were abnormal for a child of MH's age.

OV 11 provides that 25 points are assessed when "[o]ne criminal sexual penetration occurred." MCL 777.41(1)(b). Moreover, the following requirements apply when scoring OV 11:

> (a) Score all sexual penetrations of the victim by the offender *arising out of the sentencing offense*.
>
> * * *
>
> (c) *Do not score points* for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense. [MCL 777.41(2)(a), (c) (emphasis added).]

Our Supreme Court has defined "arising out of" to mean "a causal connection between two events of a sort that is more than incidental." *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006). "[T]his requires that there be such a relationship between the penetrations at issue and the sentencing offenses." *Id*. Furthermore, based on MCL 777.41(2)(c), "it is clear that each criminal sexual penetration that forms the basis of its own sentencing offense cannot be scored for purposes of that particular sentencing offense." *Johnson*, 474 Mich at 102 n 2. In other words, trial courts may not assess 25 points for OV 11 for any penetration that forms the basis of a defendant's CSC-I or CSC-III conviction; there must be evidence an additional penetration.

In *People v Wilkens*, 267 Mich App 728, 743; 705 NW2d 728 (2005), we held that OV 11 was properly scored at 25 points. The defendant was convicted of two counts of CSC-I, and the first count included penetration of the victim. *Wilkens*, 267 Mich App at 730, 743. For the first count, the defendant was charged with only a single penetration of the victim; yet the evidence showed "that defendant penetrated the female victim with both his mouth and a sex toy" more than

once. *Id*. at 743. Moreover, for the second count, the defendant was sentenced for aiding and abetting another individual's penetration of the victim. *Id*. Yet the evidence showed that, in addition to aiding and abetting in the penetration of the victim, the defendant himself penetrated the victim more than once. *Id*. Therefore, we held that assessing 25 points for OV 11 was proper. *Id*.

Here, the jury found defendant guilty of 13 counts of CSC-I, which requires a single penetration of the victim for each count. See MCL 750.520b. Therefore, the 13 sentencing offenses for defendant included a total of 13 penetrations of the victim using either defendant's tongue or vibrator. MH estimated that defendant had penetrated her vagina with the vibrator between three and five times, but she estimated that he had used his tongue more than 10 times and up to three times per week. Given that the abuse lasted for years, the number of possible instances was substantial. Furthermore, MH described seven specific instances of abuse, and MH testified about at least three specific instances in which defendant penetrated her vagina with both his tongue *and* the vibrator contemporaneously. Accordingly, there was evidence of many additional penetrations beyond the 13 penetrations that defendant was sentenced for and which arose from the sentencing offenses. For purposes of OV 11, only a single additional penetration was needed, see MCL 777.41, and it was not necessary to know what *exact* penetration formed the basis of each sentencing offense, see *Wilkens*, 267 Mich App at 743 (showing no discussion about what specific penetration formed the basis of the sentencing offense); *People v McLaughlin*, 258 Mich App 635, 676-677; 672 NW2d 860 (2003) (rejecting an interpretation that would prohibit the trial court "from assigning points for the one penetration that forms the basis of *any* first-or third-degree CSC conviction").

## D. STANDARD 4 BRIEF

Through his Standard 4 brief, defendant argues that he was entitled to a more specific unanimity instruction regarding the jury's verdict and that defense counsel was ineffective for failing to request such an instruction.

A defendant has the right to a unanimous jury verdict, and the trial court must instruct a jury about the need for a unanimous verdict. *People v Chelmicki*, 305 Mich App 58, 67-68; 850 NW2d 612 (2014). See also MCR 6.410(B). This is often met "by providing the jury with a general instruction on unanimity," but, under certain circumstances, "a specific unanimity instruction may be required . . . ." *Id*. at 68 (citation omitted). As our Supreme Court long ago explained,

> when the state offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act *if* the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. [*People v Cooks*, 446 Mich 503, 530; 521 NW2 275 (1994) (emphasis added).]

"The critical inquiry is whether either party has presented evidence that materially distinguishes any of the alleged multiple acts from the others." *Id*. at 512.

-12-

For example, in *Cooks*, 446 Mich at 527-529, our Supreme Court held that a more specific unanimity instruction was not required. The *Cooks* defendant was charged with only one count of CSC-I, but the victim at trial testified about three separate instances of sexual penetration. *Id.* at 505. These instances allegedly occurred over a three-day period. See *id.* at 506-507. The victim testified that, during each instance, the defendant fondled the victim's breasts and vagina and pushed her against a wall, and the victim "believed" that, each time, the defendant penetrated her anus with his penis. See *id.* The victim testified that, for two of these three instances, defendant also kissed her. See *id.* The trial court gave the jury a general instruction about a unanimous verdict, and we vacated the defendant's conviction on the basis that the jury needed to be instructed about unanimously agreeing on what specific act of penetration occurred. *Id.* at 505-506.

Reversing our decision, the *Cooks* Court held that

the evidence offered in this case to support each of the alleged acts of penetration was materially identical, i.e., the complainant's equivocal testimony of an anal penetration, occurring in the same house over an unspecified three-day period in January 1989, while only she and defendant were in the room. Thus, the multiple acts alleged by the prosecutor were tantamount to a continuous course of conduct. [*Id.* at 527-528.]

The Court distinguished prior cases because the "defendant here did not present a separate defense or offer materially distinct evidence of impeachment regarding any particular act." *Id.* at 528. Rather, the defendant had argued that none of the alleged conduct occurred. *Id.* Consequently, there were no "materially distinct proofs regarding any of the alleged acts," and "the sole task of the jury was to determine the credibility of the victim with respect to the pattern of alleged conduct." *Id.* at 528-529. The Court also noted the lack of "any indication of juror confusion or disagreement over the existence of any of the alternative acts . . . ." *Id.* at 529. See also *Bailey*, 310 Mich App at 719 (holding that a more specific unanimity instruction was not required because of materially identical evidence and no materially distinct proofs regarding any of the alleged acts).

Here, MH's testimony for each instance of abuse was materially identical because of the similarity of the abuse. The abuse occurred in the sailboat and the house, and each instance involved penetration either by tongue or vibrator, or both. MH even described how defendant "would do the same thing over and over," further supporting the similarity. Similarly to *Cooks*, defendant's conduct in the present case may be viewed as a continuous course of conduct; moreover, defendant did not present a separate defense but, rather, categorically denied perpetrating any of the abuse against MH. Accordingly, the jury's sole task was to determine credibility regarding the pattern of alleged abuse. Defendant has also failed to show any suggestion of juror confusion or disagreement. The trial court clearly instructed the jury about what counts were dismissed counts and to not consider them. To the extent that defendant asserts possible confusion because the counts were renumbered, we reject this assertion in the face of such clear instructions by the trial court. Without any error, defense counsel had no duty to make a futile objection.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Sima G. Patel